Merrimack,
June 1, 1939. } No. 3084.

RUBY H. CARBONE WHIPPLE, *Adm'x*

*v.*

BOSTON & MAINE RAILROAD.

*Robert W. Upton, Richard F. Upton* and *John H. Sanders* (*Mr. Robert W. Upton* orally), for the plaintiff.

*Demond, Sulloway, Piper & Jones* (*Mr. James B. Godfrey* orally), for the defendant.

BRANCH, J.   The defendant's exceptions will be considered in the order in which they were discussed in its brief.

Defendant's exception to the denial of its motion to set aside the verdict "because the damages are excessive" appears to be without merit, and is overruled.   There was evidence that the plaintiff's decedent, George J. Carbone, was 31 years of age at the time he was killed; that he was a young man of good habits with a life expectancy of 33.68 years; that he was by occupation a taxicab driver and chauffeur; that during the years 1931 and 1932 his earnings averaged between $25 and $30 a week when fully employed; that during May and June, 1933, he earned $50 per week for a period of seven consecutive weeks, and that at the time of his death he was earning $40 per week.   In answer to the question, "What did he do with his earnings?" the plaintiff testified: "He always brought them home to me. Q. You used them for what?   A. For the purpose of feeding and clothing the children and see they were well provided for.   Q. That is, his earnings were used for the family?   A. Yes, sir."   It therefor might be found that the decedent had a substantial earning capacity and a proven disposition to work and support his family whenever work was available.   Under these circumstances it is difficult to imagine contravailing considerations which would compel the conclusion that, as a matter of law, the loss caused to his estate by his death was less than $10,000.

The fact upon which the defendant chiefly relies is that during the last two years of his life the decedent's family had received public relief.   We are clearly of the opinion that the amount of money earned by him during the depths of a business depression is not to be accepted as the controlling index of his earning capacity and no legal ground is perceived for revising the jury's estimate of the amount of damage suffered by his estate through his death.

The foregoing conclusions also dispose of the defendant's exceptions to the denial of its requests numbered 40 and 41, both of which had reference to the fact that Carbone's family was on relief in 1932, 1933 and 1934. The defendant was not entitled, as a matter of law, to have this portion of the evidence upon the issue of damages emphasized by specific notice in the charge. *Colby* v. *Lee*, 83 N. H. 303, 307, 310.

The automobile in which the decedent was riding was driven by one Dion. Subject to defendant's exception the plaintiff was permitted to introduce testimony as to Dion's custom and habit of using care when approaching a railroad crossing, as follows: "He always slowed down and stopped; that is, he slowed down, looked and listened." The defendant argues that it "conclusively appear[s] that in the particular instance such custom was not observed" (*Tucker* v. *Railroad*, 73 N. H. 132) and hence that the admission of this testimony was error. In making this argument the defendant necessarily attributes conclusive force to the testimony of its engineer, who testified that Dion's car approached the crossing at a speed of 45 miles per hour, which was not diminished before it reached the crossing. The credibility of testimony being for the jury, the defendant is, of course, in no position to insist that the testimony of its employee be taken at its face value and the foundation of its argument thus collapses. In accordance with our recent decision in *Buxton* v. *Langan*, *ante*, 13, the testimony was properly admitted.

The defendant also excepted to the admission of the testimony of one Abbott, who testified as an expert regarding the distances within which the train in question could have been stopped at varying speeds. Before this testimony was received, defendant's counsel was permitted to cross-examine the witness as to his qualifications and he was questioned at great length in regard to his knowledge of the construction and operation of air brakes. At the close of this examination the court found him to be qualified and admitted the testimony above referred to. The question of the witness' qualification being one of fact for the trial court, it is sufficient to say that an examination of the testimony indicates ample evidence to support the finding of the court in the present instance. In fact, no controversy would probably have arisen were it not for the fact that the witness admitted upon cross-examination that when testifying upon a previous occasion in another case he had advanced an entirely different theory as to the principle upon which air brakes operate. The witness admitted that upon that occasion he "got mixed up"

but stated that he had since made "quite an extensive study" of air brakes. He was not called primarily as an expert on the subject of air brakes, but as a civil engineer who had had long practical experience as an official of the New York Central Railroad in determining the causes of accidents and who had had occasion to observe the actual effect of air brakes in stopping trains. Under these circumstances his admission that upon a former occasion he gave erroneous testimony as to the principle upon which such brakes operate, did not compel the conclusion that his testimony would not aid the jury in its search for the truth in the present case. The defendant's exception to the admission of this testimony is therefore overruled.

During the argument of plaintiff's counsel to the jury, the following proceedings took place:

"*Mr. Upton:* We charge the defendant with negligence in failing to maintain a proper look-out as its train approached the crossing that night. We charge the defendant with negligence in failing to give suitable warning of the approach of the train that night. Again, we charge the defendant with negligence in operating its train at an excessive speed, and finally we charge the defendant with negligence in failing to have a crossing watchman there on that night. It is for you to say whether any or all of these charges are well founded. But I want to remind you in a case of this character if there were no evidence to establish the defendant's fault, it would be the duty of the Court to withdraw the case from you. *Mr. Jones:* Note an exception to that, if the Court please, it is absolutely improper and prejudicial. *Court:* Exception noted." Obviously the defendant's exception was not taken in accordance with the procedure recommended in *Tuttle* v. *Dodge,* 80 N. H. 304, which requires an objection to the questioned argument and a definite ruling thereon by the trial court, to which exception may be taken by the party aggrieved. The present case exhibits a reversion to "the long established erroneous practice here of claiming an exception without first objecting and obtaining a ruling from the presiding justice." *Tuttle* v. *Dodge, supra,* 312. "No good reason appears for continuing such practice." (*Ib.*)

As clearly indicated in the opinion last referred to, the effect of a statement in argument which may be thought to endanger the fairness of the trial should forthwith be considered and, if necessary, remedied by an order of the trial court. The disturbing number of cases transferred upon exceptions of this character indicates the desirability, amounting almost to necessity, of adhering more closely

to the proper procedure above referred to. The relaxation of the rule laid down in *Tuttle* v. *Dodge, supra,* which has been sanctioned by the subsequent decisions of this court (*Salvas* v. *Cantin,* 85 N. H. 489; *State* v. *Wargo,* 83 N. H. 532) has been productive of unfortunate results, and a more rigid insistence upon the proper procedure may be expected in the future. This does not mean that a ceremonial use of the words "I object" is required, but counsel must make it clear that they are addressing the court and asking for a ruling upon an ascertainable portion of the opponent's argument.

In the present instance no ruling of the court was requested or made. The only exception claimed by the defendant was to the language used by plaintiff's counsel, and this was the only exception "noted" in accordance with the order of the court. Such an exception raises no question of law for this court to pass upon.

In view of this conclusion some revision of the broad language used in *Salvas* v. *Cantin, supra,* and other recent cases may be necessary. In the case last cited it was said that "in the absence of differentiating circumstances the allowance of an exception must be regarded as an implied sanction of the argument." In that case there was a definite objection to the argument in question and a reason stated therefor. In other words, a request for a ruling by the trial court was made and the court's order "exception noted," was properly construed as a shorthand way of overruling the objection. As applied to such a situation the language above quoted was not inaccurate, but it should not be construed to cover a case like the present where no real attempt was made to invoke the judgment of the trial court.

Here no statement of the ground of objection now argued was made. The assertion that the argument was "absolutely improper and prejudicial" was an unspecific generality. Nothing was said to explain the claim of impropriety and prejudice. The court's attention was not called to the possible inferences which counsel now say might be drawn from the argument, and no effort was made to have the court give heed to an objection,—in which material respects this case differs from *Ferris* v. *Saulnier, ante,* 96. At most a ruling as a formality and a mechanism of procedure was sought. Since counsel did not attempt to secure a hearing on the merits of an objection they are in no position to say now that all rights were saved by a procedural observance which did not disclose its substantive content. The record does not support the conclusion that counsel made any attempt to obtain from the trial court a disallow-

ance of the argument in question. There is nothing to indicate that the court would not have been responsive to a request to hear reasons and argument in support of an objection if such hearing had been sought. In this state of the record, not only was the procedure called for by *Tuttle* v. *Dodge, supra,* with its later modifications, disregarded, but the spirit and purpose demanding the procedure was virtually ignored. Clearly practice of this sort is so disturbing to the aim and end which is the objective of the procedural rule laid down in *Tuttle* v. *Dodge, supra,* and which is in no respect modified or weakened by the later modifications of the rule, that it constitutes a departure from principle too serious to receive countenance. The exception is therefore overruled.

In summary, it may now be said that an exception involving the propriety of argument to the jury will not be considered by this court unless it clearly appears that it was taken to the refusal of the trial court to sustain an objection, and where it is intended to transfer questions of this kind the reserved case should state in express terms that an objection was made and overruled.

The loose practice recently sanctioned, no doubt furnished the basis for the undoubted belief of defendant's counsel that a proper exception had been taken in this case. For this reason it may not be out of place to point out that the same result would be reached if this belief had been well founded.

It is not clear from the context exactly what purpose plaintiff's counsel intended to accomplish by the last sentence of the above quoted argument, although it may be conjectured that it was designed to serve as an answer to the vigorous assertions of the defendant's counsel that a large part of the plaintiff's evidence was "chaff" or "dust in your eyes" or "a red herring thrown across the trail." Its logical effectiveness as an answer to such assertions cannot be doubted. In fact the substance of the defendant's contention is that it was so effective as to be prejudicial and deprive it of a fair trial.

Similar arguments have been held to require the setting aside of verdicts in two cases cited by the defendant, *i.e. Kull* v. *Company,* (Mo. App.) 261 S. W. Rep. 734; *Daly* v. *Railroad,* 197 Mich. 340, although these cases appear to be distinguishable upon their facts. The impropriety of similar arguments was also emphasized in *St. Louis M. & B. Ry. Co.* v. *Green,* (Texas Civil Appeals) 183 S. W. Rep. 829 and *Gerber* v. *Kansas City,* 304 Mo. 157, but in these cases it was held that the error was not of sufficient gravity to require setting aside the verdicts.

If the argument be construed, in accordance with the defendant's contention, as a veiled reference to the denial of its motions for a nonsuit and a directed verdict, it is clear, as pointed out in the above cases, that it might be open to serious misapprehension. Such motions addressed to the trial court are matters with which the jury has no legitimate concern and reference thereto in any form cannot be approved. We do not think, however, that the allowance of the argument in the present case is necessarily fatal to the verdict.

The legal consequences of the plaintiff's argument are to be determined by a fair construction of the language used rather than by imaginative guesses as to the inferences which the jury might have drawn from it and we cannot accept the contention of the defendant that such an argument "injects into the consideration of the jury an opinion of the trial judge on the merits of the case." We do not think that the argument was equivalent, as the defendant argues, to a statement that "the trial judge has ruled that you can find that the defendants were at fault and, therefore, you should follow the path which the court has pointed out and bring in a verdict for the plaintiff."

This line of reasoning involves the assumption that the jury probably drew from counsel's abstract statement of law the following inferences: 1, The defendant has moved for a directed verdict; 2, the court has denied that motion; 3, this indicates that the court believes the plaintiff is entitled to a verdict; 4, the jury should adopt the view of the evidence which the court has indicated. Obviously the language of counsel standing alone furnishes no basis for such inferences and the defendant's position involves the further assumptions that the jury had some independent knowledge that such motions are sometimes made but wholly misapprehended their true significance, and on the basis of this inadequate information was led by the foregoing sentence of the plaintiff's argument to engage in a groping attempt to discover how the court viewed the evidence in complete disregard of the instructions which they received. Such assumptions are not to be countenanced. On the other hand, it is to be assumed that the jury understood and followed the instructions of the court, which in this case were unusually full and complete, to decide all questions of fact in accordance with the evidence submitted to them. *Janvrin* v. *Powers*, 79 N. H. 44, 47; Hening, N. H. Dig. 1266. The present case is thus to be distinguished from our recent decision in *Ferris* v. *Saulnier, ante,* 96, where the main point at issue was the meaning of the words used in argument, and no underlying

assumptions as to the independent knowledge of jurors was involved and where a request for remedial instructions was denied. "The possibility that language, used in the heat of argument, may have given an 'impression' of the existence of an unasserted fact and that this impression may, in turn, have been used for an improper purpose, is too problematical to furnish an acceptable basis for judicial decision." *Crowley* v. *Mailman*, 88 N. H. 388, 390.

It should not be inferred from what has been said above that we approve the argument here involved. As indicated in the cases cited by the defendant the propriety of any such statement is extremely dubious. A slight departure from the form of words used here would necessitate the granting of a new trial. The same form of words used under other circumstances might be equally fatal. If there were in the record any substantial basis for the inferences and assumptions upon which the defendant's contention is based, the argument would be clearly improper. The use of similar language in other cases should be avoided.

The defendant requested two instructions as to the duty of a driver, when approaching a railroad crossing, to control his speed and to keep a lookout for trains, coupled with a third request as follows: "14. If Dion was negligent and his negligence was the proximate cause of the accident, then the plaintiff cannot recover." The defendant also requested the court to give to the jury a definition of proximate cause but did not venture to include in its request a definition of that term which would be satisfactory to it. The first two requests above mentioned were substantially covered by the charge, and the court thus went further than the law requires in specifying "the definite measures of care to be taken." *Morrison* v. *Railroad*, 86 N. H. 182. The court further instructed the jury as follows: "If you find that Mr. Dion was negligent and that his negligence was the sole proximate cause of the accident, then your verdict should be for the defendant." This modification of the defendant's fourteenth request above quoted, was necessary and proper, for, as pointed out in the plaintiff's brief, "the negligence of the defendant and of Dion may have combined to produce the accident, and if this were so, the defendant would be liable even though Dion's negligence was a proximate cause. *Tetreault* v. *Gould*, 83 N. H. 99, 102. Defendant's whole argument upon this branch of the case appears to be based upon the erroneous assumption that there could be only one proximate cause for the collision in question, which quite naturally invalidates the conclusions which we are urged to adopt.

In response to the defendant's request for a definition of proximate cause, the court instructed the jury as follows: "Proximate cause means the nearest, the immediate, the direct cause, the full cause, the cause that sets another or other causes in operation, the dominating cause." We think that this definition probably served as well as any other which could have been chosen to assist the jury in determining whether the railroad should be relieved from liability by placing the entire blame for the collision upon Dion in accordance with the defendant's contention and since the defendant failed to bring to the court's attention a better definition of the term, it takes nothing by its exception to the definition adopted by the court.

The defendant introduced evidence that the plaintiff's decedent and the other passengers in the car, on the day before the accident, made an arrangement with Dion whereby Dion was "to take them to their homes in Boston over the week end and they offered to pay him $10 and his expenses and give him a good time if he would take them down." With reference to this testimony the defendant requested the court "to submit to the jury the issue of agency between Dion, the driver, and the passenger Carbone." It also requested another instruction based upon the theory that the trip was a joint enterprise which gave Carbone "a right to control the manner and direction in which the car was operated." These requests were denied and the defendant excepted. This exception appears to be without merit and is overruled. There was evidence that Dion was a licensed chauffeur; that he owned the automobile involved in the accident, and was the operator thereof. We think that the evidence upon which the defendant relies was wholly insufficient to justify the conclusion that the parties were engaged in a joint enterprise within the technical meaning of that term, (*Noel* v. *Lapointe*, 86 N. H. 162) or that Dion was upon any other theory the agent of Carbone.

The defendant requested the court to charge the jury as follows: "32. If you believe the plaintiff's claim that the automobile was approaching the crossing at a speed of 8 to 10 miles per hour, then there was no duty on the part of the engineer to apply his brakes when the automobile was 75 feet from the crossing." There were two other requests of a similar nature in which it was sought to have the duty of the engineer specifically defined with reference to his observation of the manner in which the automobile approached the crossing. These were not requests that the court inform the jury of the law in its application to the case but that they be instructed to decide the case upon selected portions of the evidence. As such

they were properly refused. *Watkins* v. *Railroad*, 84 N. H. 124, 133.

With reference to the claim of the plaintiff that this crossing should have been given special protection, the court correctly charged the jury in accordance with the principle stated in *Stocker* v. *Railroad*, 83 N. H. 401, that "reasonable need of special protection is to be determined by the special and unusual dangers of the crossing considered." The defendant, however, requested that the jury be charged as follows: "22. There is no duty on the defendant railroad to provide extra crossing protection where the physical surroundings are such that a traveler is able, by the use of ordinary care, to discover the approach of trains in ample time to stop before getting upon the crossing." There were three other similar requests based upon certain testimony as to the distance from which a traveler could observe the approach of a train. These requests were denied and the defendant excepted.

Defendant's twenty-second request was calculated to divert the attention of the jury from the numerous factors of danger at this crossing upon the night when this collision occurred. The fact that a person with knowledge that he was approaching a railroad crossing might, by the exercise of reasonable care, discover the approach of a train in the day time had little bearing upon the duty of the defendant toward strangers to the locality with no knowledge of the existence of the crossing whose presence was clearly expectable at the time in question. The defendant's exception to the denial of this request is therefore overruled. The other three requests, like those considered above, would have called upon the jury to decide the case upon selected portions of the testimony and as such were properly refused.

Defendant's other exceptions, which have not been briefed or argued, are assumed to have been waived.

No errors of a character prejudicial to the defendant's rights have been discovered in the record and the order therefore is

*Judgment on the verdict.*

All concurred.