Carroll,
Dec. 2, 1941. } No. 3275.

ETHEL M. PROKEY, *Adm'x v.* LLOYD W. HAMM.

EVELYN PROKEY, *by her mother,* ETHEL M. PROKEY, *v.* SAME.

ETHEL M. PROKEY *v.* SAME.

514

*Rolland R. Rasquin* (by brief and orally), for the plaintiffs.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the defendant.

BURQUE, J. The following facts are undisputed: May 13, 1940 the defendant bought a 1935 pick-up Chevrolet truck. It was delivered to him at his home, placed in his barn, and not driven until May 28. On that day defendant drove the truck to the garage, where he had purchased the truck, to have it inspected and have a state inspection sticker placed on the windshield. The truck was inspected, a sticker placed on the windshield, and a certificate of inspection given to the defendant. The truck was driven on that and the next day without giving any warning of any mechanical defect. On the thirtieth defendant experienced a slight shimmy when going forty-five miles per hour. This, he says, disappeared when he slowed down to thirty-five miles per hour.

Defendant claims he experienced no other shimmy after that. It can be found, however, that on the morning of May 30, on an occasion other than the one referred to by the defendant when he experienced a shimmy, the truck jerked to the left, at least a few feet over the center of the road, when coming to the top of a small hill; and that June 2, the day of the accident, while coming from the Prokey home to defendant's home, the car again jerked to the left, two or three feet beyond the yellow line, on a curve. It does not appear at what speed the truck was going on either one of these occasions, but it can be found that it was going under forty miles per hour as defendant says he never drove it over forty after his first experience on the thirtieth. It can further be found that the defendant's wife drove the truck, probably May 30, and found "it steered so badly that she told her husband she wouldn't take it again until he fixed it." Also that "in the few days defendant had owned the pick-up he had discovered a shimmy in the right front wheel,

but had not been able to learn its cause." Defendant went to the garage June 1, the day before the trip in question, inquired about snubbers, and spoke of the shimmy; and it can be found that June 2, before he started on the trip to Worcester, he looked at the front of the truck. All of this evidence was sufficient to warrant the jury in concluding that defendant did know and suspected, or at least should have known, that there was something wrong with the truck, and that being so put on inquiry, reasonable care would require him to ascertain the cause of the trouble (*Gobrecht* v. *Beckwith*, 82 N. H. 415, 420), and have whatever defect was making the truck act so remedied before undertaking a trip such as he contemplated and started to take when the accident happened, to wit, a total of a two-hundred-mile trip to Worcester and return. The defendant had no longer any right to rely on the state inspection. Being put on his guard it was his duty to use care in determining the safety of the truck, and where knowledge is necessary to careful conduct voluntary ignorance is equivalent to negligence. *Frear* v. *Company*, 83 N. H. 64, 66. The accident occurred as defendant approached the top of a slight descending hill; the truck jerked to the left, then to the right, left again, turned over on the right hand side of the road, striking a small tree, and headed in the direction it came from. The truck was out of control from the time it went to the left of the road, and defendant from that time on was helpless in attempting to steer or stop the truck. Some of the occupants were thrown out and injured. There were five young people sitting in the body of the truck, on improvised seats, and defendant and his wife were seated in the cab, with defendant at the wheel. Violet was killed as the result of the accident, and Evelyn was injured. The road was a black level smooth road at the place of the accident, and there was nothing in the road to cause the truck to get out of control.

It is plaintiffs' contention that the shimmy, or jerk, was caused by a defective condition of the right hand spring, the U bolts of which had become loose, due to the breaking off of the center bolt, (intended to hold the spring solidly attached to the axle), which in turn caused the "shim" under the spring to work itself free and drop. The shim is a tapered piece of steel placed between the spring and the axle to throw the front end of the car forward. There was sufficient evidence to support plaintiffs' contention. Mechanics testified that a broken center bolt would have the effect of loosening the shim so as to cause it to work out, and in turn loosening the U bolts, resulting in a movement back and forth of the spring on the axle

and produce a "wander." This condition could have been of some standing, or might have come on suddenly. The "shear" of the bolt, the partial rusty portion of it at the place where it broke, the chafed appearance of the spring and axle, the findable action of the truck prior to the time of the accident would warrant a conclusion that the condition had been of some duration (at least three days before the accident), and that it had caused the truck to act as it did. The motions for nonsuits and directed verdicts were properly denied.

Defendant excepted to one of plaintiff's expert witnesses testifying to "what effect, if any, those loose U bolts would have on the operation of the car." Objection was made on the ground there was no evidence the U bolts were loose before the accident, and exception taken to the witness answering the question. The exception must be overruled. There was evidence to charge the defendant with knowledge that there was a defect in the car which required attention, and that a reasonably careful inspection by a mechanic would have disclosed the cause of the trouble, which might have been either the broken bolt or the absence of the shim and the consequent looseness of the U bolts, or both. *Turner* v. *Company*, 75 N. H., 521, 525.

Defendant took certain exceptions to portions of argument of plaintiffs' counsel. (A) To his statement that the inspection required by the Motor Vehicle Commissioner did not require examination of those parts that are claimed to have been defective and to have caused the accident. Unless "king bolt" and "center bolt" are synonyms, the argument was correct. Nowhere in the case do we find the words "king bolt" used in the sense that they might mean "center bolt" except in two instances. Invariably the center bolt has been referred to as such, and there is no requirement that the center bolt should be inspected, unless it can be said that it, together with the U bolts, springs and shims are part of the steering mechanism, and that "king pins" (appearing in the inspection requirements) mean "center bolt." In the absence of evidence that they are, we cannot say the argument was error. This exception is overruled. It might be added that reference to the cost, if any, of the inspection was immaterial.

(B) Defendant excepted to counsel's argument to the effect that defendant testified he "assumed the risk of taking those children on a two-hundred-mile trip, knowing there was something the matter with that car." Though defendant did not so testify unqualifiedly

and in so many words, he did testify and it could be inferred from his testimony that he did take the risk, expecting there was no danger provided he kept the truck under forty miles per hour. He admitted his speed was forty at the time the trouble manifested itself and the accident happened. The argument was not prejudicial.

(C) The next exception was to the statement in argument that "Wakefield (the garage-man) told him [the defendant] the snubbers wouldn't take the shimmy out of the front of his car." *Mr. Murchie:* "I object to that as not being in accordance with the testimony and except if it stands." The Court: "Yes." Then counsel continues as follows: "It is an inference that you may draw from what you heard" Wakefield and Hamm say. "We can infer from the testimony of Mr. Wakefield and Mr. Hamm that is what happened." Wakefield testified to no such thing, as stated by plaintiffs' counsel, but defendant testified (after telling Wakefield about the shimmy), "I asked him about snubbers and he said he thought they might help." It might be that in some instance such a misstatement of evidence would be sufficient cause for setting a verdict aside, but in view of the fact no snubbers were put on, and no claim is made that the accident was due to the absence of snubbers, the argument is to be deemed harmless. It is to be noted also that no further objection was made and exception claimed by defendant after plaintiffs' counsel argued it was an inference that could be drawn, and no ruling asked of the court, either at the time the exception was claimed or after the explanation that what was meant was that the argument was warranted because it was a fair inference from the testimony. The situation presents no question of law for us to pass upon. *Tuttle* v. *Dodge*, 80 N. H. 304, 313; *Whipple* v. *Railroad*, 90 N. H. 261, 265.

(D) Finally defendant excepted to the argument that, "You know and I know that if this was the bolt and the shim had been above this piece of bolt in there and the spring above that, that if that remained in this countersunk hole, how in the world could the shim possibly work off that broken piece of bolt?" *Mr. Murchie:* "If your honor please, to Mr. Rasquin saying what he knows I object as entirely improper and wish an exception." *Mr. Rasquin:* "Not what I know. The experts have told us, . . . . " The withdrawal apparently was satisfactory, as no ruling was asked of the court, thereafter, and no further objection made or exception asked and noted. The defendant takes nothing here. *Tuttle* v. *Dodge, supra,* 316; *Whipple* v. *Railroad, supra,* 264.

There was no occasion for the court to grant defendant's request

for an instruction on the emergency doctrine. Since we have seen that liability is predicated on findable negligence on the part of the defendant in undertaking a trip, either knowing or having reason to know that his truck had some defect which might cause an accident, he cannot take the position that he was confronted with an emergency not traceable to his own prior lack of due care in ascertaining whether the truck was in a reasonably safe condition to use for such a trip, and therefore excuse his conduct because of his inability to avoid the accident when he found himself unable to manage his truck.

The court's instruction to the jury was as follows: "The plaintiffs further claim that immediately prior to the capsizing of the truck, the truck was operated in a negligent manner by the defendant." "If you find that the truck overturned solely because of the breaking of the center bolt at the time, and that the defendant did not know or in the exercise of due care would not have known that it was a defective bolt and likely to break, then the defendant would not be negligent." This limited instruction definitely puts before the jury the cause of the accident as a broken bolt, and does not submit the operation of the truck as such, i.e., the way in which the defendant handled his truck after the trouble occurred, as a ground upon which negligence can be predicated. The defendant was perfectly protected in having the case submitted as it was, and there was no need of submitting the emergency doctrine. And even though this part of the charge refers to the breaking of the center bolt only as a probable cause of the defect, previous portions of the charge refer to the general mechanism of the truck, and to no specific part. It would seem the above instruction is as favorable to the defendant as it can be.

*Judgments on the verdicts.*

ALLEN, C. J., was absent: the others concurred.