JAMES COLBY *v.* VERNE AVERY.

*Robert W. Upton* (by brief and orally), for the plaintiff.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for the defendant.

PAGE, J. The plaintiff suffered personal injuries on December 11, 1941, when he was struck by an automobile owned and driven by the defendant on a public highway in Boscawen. The plaintiff attempted vainly to start his truck that morning. It could be found that he and his brother Robert then pushed the truck out of the Colby yard and southerly along the highway a distance of some 150 feet. Failing in this manner to start the motor, they waited for the arrival of the school bus to take Robert to the Penacook High School. The driver of the bus, Edward Bassett, then towed the truck south-

erly down the highway. After the truck, with the plaintiff at the wheel, had been towed some distance, the motor started, the plaintiff blew his horn as a signal for Bassett to stop, and Bassett did stop. The distance the truck was towed turned out to be a matter of importance in determining the approximate place of the accident. The statement made by the plaintiff to a representative of the defendant's insurer, six weeks after the accident, gave the distance as 150 or 200 feet; but his testimony at the trial eighteen months later gave it as 500 to 600 feet. This discrepancy the plaintiff explained by saying that he had first estimated the distance, but had later viewed the location, and knowing that the accident happened just north of a large stump, was able by pacing to revise his estimate made while he was still in the hospital. The explanation might reasonably be accepted.

After the bus and the truck came to a stop, they stood in the westerly lane (their own side) of the highway with their right wheels about one foot off the pavement, if the plaintiff be believed, and one or two feet easterly of the westerly edge of the pavement, if the defendant be believed. The plaintiff and some of his witnesses testified that Colby remained in the truck two or three minutes to warm the motor. He made no such claim in his deposition. The jury might nevertheless have believed his testimony in chief.

The plaintiff then stepped out. While doing so, he noticed the defendant's car approaching from the south, about 500 or 600 feet away, at a speed that he and his witnesses testified was 50 or 60 miles an hour, while the defendant and his witnesses said it was 35 or 40 miles an hour. The defendant's car, the plaintiff said, was astride the middle of the highway. The defendant and his witnesses said that he was driving nearly as far as possible to the easterly edge of the pavement, which was about 20 or 22 feet wide. The plaintiff admitted that he foresaw that he might be hit and that he stood for some six seconds with his left foot on the ground, his right foot on the running board of the truck, and his hand on the door, which he was in the act of closing, believing that the defendant would see him and swerve to the right.

The theory on which the plaintiff tried his case was that the defendant, without slackening speed or swerving, though he saw the bus and the truck, passed within two feet of the truck; and that the front bumper of the Avery car hit the plaintiff's leg, and spun him about so that his left hand was caught on the handle of Avery's car, where blood and hair were found. The defendant's theory was that

the plaintiff darted out of the truck as the defendant's car got nearly abreast and ran into the middle of the Avery car. If the latter had happened, possibly the plaintiff must have been found conclusively negligent. But the defendant's own testimony cast doubt upon his theory, because if his car and the truck were where he says they were, in a road 20 to 22 feet wide, the distance between the cars, as Avery passed, would have been at least six feet. Avery himself estimated it at three or four feet. Avery, who charges the plaintiff with discrepancies between known distances and estimated ones, begins himself with such a discrepancy. Yet his counsel insists that his testimony is to be believed, while that of the plaintiff must be disbelieved and the jury not permitted to consider it. The situation, however, is such that the jury had the duty of finding what the truth probably was, without the necessity of the Court finding that either party was consciously and fraudulently building up a case, as was held in *Hebert* v. *Railroad*, 90 N. H. 324.

While the plaintiff would be bound by his testimony concerning objective matters known to him, he would not be so bound as to matters about which he might be mistaken. *Harlow* v. *Leclair*, 82 N. H. 506; *Morris* v. *Railroad*, 85 N. H. 265; *Sarkise* v. *Railroad*, 88 N. H. 178, 181. So Colby was bound by his statement that he saw the defendant's car approaching and appreciated that there was danger. *Katsikas* v. *Railway*, 90 N. H. 21; *Gelinas* v. *Company*, 90 N. H. 312. Knowing that he did not move away from the danger, he is bound by his testimony to that effect. *Heidenreich* v. *Dumas*, 88 N. H. 453. The consequent inference from these principles will presently be discussed.

If the distance was six feet or more as indicated by Avery's testimony as to the positions of the cars in the highway, one could never account for the testimony of one of Avery's witnesses that he saw Colby thrown from the Avery car to the side of the truck, and then bounced back into the Avery car again. But the testimony about the bouncing back and forth would be perfectly consistent with the plaintiff's testimony that the Avery car was within two feet of the truck and practically astride the middle of the road. The jury were justified in rejecting the defendant's theory of how the accident happened.

But the defendant's counsel nevertheless argues that, even if the defendant was negligent, the plaintiff must be held to have been contributorily negligent, since for six seconds he stood watching the defendant's approach at high speed, knowing that he might be hit,

yet making no motion to save himself, as by getting back into the truck (which was not hit), or by taking position ahead of the truck or behind it. The argument overlooks the fact that the jury might find that the plaintiff was justified in believing that Avery would see him and swerve. *McCarthy* v. *Souther*, 83 N. H. 29, 31; *Chemikles* v. *Company*, 84 N. H. 437, 438. Moreover, while we know by hindsight that Colby would have been safe if he had taken refuge in any of the ways suggested, reasonable men were not bound to find that foresight would have made it appear to him that Avery's car was in no danger of colliding with the school bus or the truck. To state it otherwise, the jury might have thought that a reasonable man, seeing the situation as Colby described it, would perceive no ponderable preference as to the safety of one place over another. The error of the defendant's view lies in his insistence that the plaintiff should have foreseen the actual outcome rather than one of possible safety, and that his foresight should have been equal to hindsight.

Much depends, as has been suggested, upon whether the accident happened a little north of the stump, as the plaintiff claims, or, as the defendant asserts, approximately 400 feet further north, just south of a gravel bank. The brake mark left by Avery's left wheel appeared on the pavement. It began at a point five feet six inches from the easterly edge of the pavement and extended in a generally northerly direction, without break, 81 feet. About midway, it was seven feet four inches from the shoulder; at its northerly end it was six feet six inches from the shoulder. The defendant's counsel contends that, since Avery says he applied his brakes as soon as he heard the thud, his car, at the moment of impact, was far on the east side of the highway, so that Colby must have run from his truck into the side of the Avery car. The distance of the run, executed while Avery, according to his story, was proceeding north a distance of some 15 or 20 feet (according to his own testimony at about 35 miles an hour), was findably six or seven feet. That would indicate that Colby's speed afoot was some twelve to seventeen miles an hour, which the jury could well doubt.

But assuming that the brake mark is definite physical evidence which cannot be denied, it does not fix with precision the place of the accident. Avery admitted in his deposition that the accident happened approximately a quarter of a mile south of the Colby house, which was Colby's own estimate at the trial. Both exaggerated in making that estimate, if the accident happened either just

north of the stump or just south of the gravel pit. Colby's pre-trial estimates would place the accident near where the brake marks were found. Both parties shifted ground. If the plaintiff moved the place south, the defendant moved it north. The defendant charges the plaintiff with bad faith and says that no reasonable man could believe Colby. As above stated, this is not a case for the application of *Hebert* v. *Railroad*, 90 N. H. 324. The discrepant statements of both parties in estimating distances left it for the jury to decide what credit should be given to their respective testimony.

In deciding where the accident occurred, the jury were not bound to find that it was at or near the brake mark. Avery asserted that immediately after the impact he applied his brakes, then let up in order to let his car roll well clear of traffic. He said that he thus rolled only ten to twenty-five feet, then reapplied his brakes continuously until he came to a stop opposite the gravel bank. But his estimate of the distance he traveled while coming to a stop under brakes was hardly more than half of the length of the mark. He was obviously a poor estimator of distance traveled, and the jury were not bound to believe the estimate of ten to twenty-five feet. They may well have thought that Avery was so startled that he let his car roll 200 to 300 feet before he finally recovered poise and applied his brakes. If so, the brake mark was perfectly useless as evidence of whether, at the moment of impact, Avery was on his own side of the road, or practically astride the middle.

There was further physical evidence that the jury could take as a corrective of the physical evidence of the brake mark and Avery's story about it. Shortly after the accident a witness named Kenney saw the brake mark as already described, then walked south, and at a point about 50 or 75 feet north of the stump found a fresh mark, a dark spot that he "figured" was blood. The plaintiff's father saw the spot later in the day.

Taking it all in all, the lengthy and painstaking analysis made by counsel for the defendant, calculated to show that the discrepant statements of Colby and his witnesses on and off the stand indicate a studied build-up of the plaintiff's case, fails of its purpose. There was plenty of room to argue to the jury that their testimony was not to be credited in full, but on the other hand plaintiff's counsel had ample room to argue to the contrary. The question was one for the jury, and they have decided it. We cannot say as a matter of law that there was no credible evidence to sustain the plaintiff's case.

The defendant excepted to the refusal of the Court to admit a purported statement by Edward Bassett for the purpose of contradicting Bassett's testimony in chief. It appeared that Bassett was unable to read. When he was faced with the statement, he said that the signature looked like his, and later somewhat doubtfully admitted that it was his. Being unable to read the statement, he was unable to say whether he had said all that appeared in the statement. A number of the sentences were read to him. Asked if he had so stated, he admitted that in some instances he had, asserted that he had no memory of stating others, and as to some flatly denied that he had ever said anything of the sort. The statements admitted by him to be true were available for contradiction as far as their nature permitted; but the other statements, as matters then stood, being unproved, were not available. In this situation, the whole statement was offered in evidence and excluded subject to the defendant's exception. It was properly excluded. *Dunklee* v. *Prior*, 80 N. H. 270. This is the only exception that the defendant has concerning the exclusion of this statement. When the document was much later identified by the man who drew it and a witness, the defendant did not again offer it in evidence, nor did he move to have the words "for identification" stricken off from the marking of the document as an exhibit for that purpose. We are not faced by the question of what the defendant's rights would have been if he had made such an offer or motion, and had excepted to an adverse ruling thereon.

The only exception pressed concerning the argument by plaintiff's counsel is to the statement twice made to the jury that the front bumper of the Avery car struck the plaintiff's leg. The defendant's theory was that it was the rear bumper that broke the plaintiff's leg after Colby had run into the side of the Avery car. The rear bumper fitted the defendant's theory and the front bumper fitted the plaintiff's. In his brief, the defendant's counsel says that there is no evidence to support the claim concerning the front bumper. "The plaintiff," he says, "testified both ways, but it is clear, we submit, that there is no substantial reliable evidence to warrant a finding that the plaintiff was hit by any part of the front end of the Avery car." It is admitted that Colby said that he was hit by the front bumper, and that his testimony was rather self-contradictory on this point. Though this left the jury to decide which part of Colby's story was probably true, the front bumper may well have been found to have been the point of contact, since its height from

the ground corresponded rather closely to the point at which Colby's leg was broken. The defendant properly urged the fact that there was no mark on the front bumper, while the dirt on the rear bumper was brushed off. Entitled to great weight as that evidence was, it did not make Colby's claim or the argument entirely implausible and incredible.

The Court did not instruct the jury, as requested, to disregard any testimony about the condition of Avery's brakes. There was a brake mark from his left wheel, but not from his right, possibly indicating that the brakes were out of repair. But as far as the record shows, the plaintiff never suggested that defective brakes caused the accident; he never claimed that Avery's unreduced speed up to the moment of contact was due to failure of the brakes to operate rather than to Avery's omission to apply them. Avery himself never claimed that he applied his brakes prior to the moment of impact. Therefore there was no issue at all in this respect, and there was no occasion for the Court to distract the jury's minds with reference to a non-existent issue. *Sullivan* v. *Sullivan,* 91 N. H. 341, 345.

The request that the jury be instructed that no part of the Colby truck was hit refers to another non-existent issue. Everybody agreed that there was no contact. The issue was whether the Avery car came within two feet of the truck, or passed at a greater distance. The defendant seems to argue that the fact of non-contact might have a tendency to prove that the distance between the vehicles was more rather than less, or that Colby stepped to the ground either earlier or later than he said he did, or that he had the truck door wider open than he said he did, or even that the truck door hit Colby (whether because, after all, the door was hit by the Avery car, despite the sought instruction, we do not know). In neither case can we find any tendency such as is claimed.

The defendant excepted to the denial of requests for instructions that if Avery's testimony were believed, and he applied his brakes immediately after the accident, the resulting brake mark required a verdict for the defendant. These requests were based on the theory that the physical evidence of the brake marks proved that Avery was on his own side of the road at the moment of contact, and that Colby was solely at fault for his injuries. This matter has already had enough discussion. The remaining requests relied on would, if given, direct the jury's attention to Colby's hospital statement as to the place of the accident, and seek to bind him to that place. That claim also is disposed of above. All these requests relied upon

over-emphasis of selected portions of the testimony, and the Court was not obliged to favor the defendant by giving them. *Whipple* v. *Railroad*, 90 N. H. 261, 270.

*Judgment on the verdict.*

All concurred.