DISTRICT OF COLUMBIA, Appellant,

v.

Daniel BETHEL, Appellee.

Nos. 88–1045, 88–1626.

District of Columbia Court of Appeals.

Argued Oct. 4, 1989.
Decided Jan. 5, 1990.

---

Edward E. Schwab, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellant.

Samuel M. Shapiro, with whom Cassandra P. Hicks, Rockville, Md., was on the brief, for appellee.

Before STEADMAN, SCHWELB, and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

The District of Columbia appeals on several grounds from a million dollar judgment entered upon a jury verdict in favor of Daniel Bethel, an inmate at the Central Facility at Lorton prison. Finding no error, we affirm.

I

Bethel was severely injured when he was stabbed by another inmate, Carter, with a "shank." [1] Bethel was asleep in his dormi-

---

1. A shank is a knife-like stabbing device. According to the testimony, a large number of prisoners at Lorton have shanks.

tory at the time of the stabbing, which apparently resulted from a relatively minor incident between Carter and Bethel two days earlier. On that occasion, Bethel had stood up for an older inmate who was working in the prison bathhouse with him and who had refused to give Carter an extra portion of soap. There was, at most, a minor skirmish between Bethel and Carter, and a correctional officer who was present took no action.

At trial, Bethel asserted that the District had negligently caused Bethel's injuries by failing to control inmate movement, by allowing inmates to have authority over other inmates, by failing to control inmates' access to weapons, by failing to provide proper supervision of inmates by officers, by unreasonably delaying its response to an emergency, and by operating an overcrowded facility. Both parties presented expert testimony. James Murphy, Bethel's expert penologist, testified that the District had failed to adhere to the applicable standard of care in each of these six respects. The District's expert, James Black, concurred in many but not all of Mr. Murphy's major conclusions.

## II

■■■ The District claims that Bethel did not establish the proper standard of care. It contends that Mr. Murphy based his testimony largely on the American Correctional Association's *Standards for Adult Correctional Institutions* (2d ed. 1981), and asserts that "ACA standards are not negligence standards." The District does not, however, challenge Mr. Murphy's expertise. Rather, it contends in effect that his testimony was legally insufficient because, according to the District, he relied on improper materials to guide his expert opinion. The District cites no authority in support of its contention that a qualified expert's opinion can be undermined in this way. In general, although an opinion rises no higher than the level of the evidence and the logic on which it is predicated, it is for

the jury, with the assistance of vigorous cross-examination, to measure the worth of the opinion. *United States v. Hill*, 62 F.2d 1022, 1025 (8th Cir.1933); *see also Singer Co. v. E.I. du Pont de Nemours & Co.*, 579 F.2d 433, 442–43 (8th Cir.1978).[2]

In any event, in reaching his conclusion that the District had violated the applicable standard of care, Mr. Murphy relied not only on the ACA standards, but also on the District's policies and procedures and on his own considerable experience in the field of penology. Bethel never argued, nor did the judge instruct the jury, that violation of an ACA standard was negligence *per se*, and there is no contention that the charge to the jury was improper.

In *Rivers v. State*, 142 Misc.2d 563, 537 N.Y.S.2d 968, 970 (Ct.Cl.1989), relied on by the District, the court described the ACA standards as "normative goals to be striven for, not the prevailing medical standards of any given community." The court held in *Rivers* that medical malpractice could not be established by simply introducing, in lieu of expert medical testimony, an ACA standard requiring the forwarding of medical records to a physician who operates on the inmate at a facility outside the prison. *Rivers* has no application to the present case, in which expert testimony was introduced and the plaintiff relied on far more than the bare ACA standards. We therefore find the District's argument based on *Rivers* unpersuasive.

## III

The District contends that the ACA standards are inconsistent with the consent decree in *Twelve John Does v. District of Columbia*, No. 80–2136 (D.D.C. April 28, 1982). This was a settlement of constitutional and related claims brought in a class action against the District by a number of prisoners at the Lorton facility. Bethel was confined at Lorton when the suit was filed, and was thus a member of the plaintiff class.

---

**2.** The judge may, of course, exclude expert testimony if he believes that an opinion based upon particular facts cannot be grounded upon those facts. E. CLEARY, MCCORMICK ON EVIDENCE § 13, at 34 (3d ed. 1984).

No argument was made to the trial court about the *Twelve John Does* decree. Indeed, the decree was mentioned once by the District at trial, at which time Bethel's counsel interposed no objection, but argued that its use by the District would open the door to other evidence about it, a contention with which the judge agreed. Apparently for tactical reasons, the District never again brought up the decree in the trial court. Nevertheless, on appeal, the District filed an appendix of materials from the *Twelve John Does* case and now contends that we should rely on it in order to hold that Bethel has not established the proper standard of care.

Absent manifest injustice, a litigant may not assert one theory at trial and another on appeal. *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988); *Hackes v. Hackes*, 446 A.2d 396, 398 (D.C.1982). "Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal." *Miller v. Avirom*, 127 U.S.App.D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967); *D.D., supra*, 550 A.2d at 48. In the present case, consideration of the *Twelve John Does* litigation after Bethel was precluded from making an appropriate record with respect to it in the trial court would be patently unfair to him. Accordingly, we decline the District's invitation to venture outside the trial record and consider facts and contentions never presented to the trial judge.

### IV

Relying on *District of Columbia v. White*, 442 A.2d 159, 165–66 (D.C.1982), the District argues that the plaintiff failed to prove the applicable standard of care with respect to several of the theories on which he predicated his claim of liability. *See also Murphy v. United States*, 209 U.S. App.D.C. 382, 391, 653 F.2d 637, 646 (1981). The District goes on to argue that "a new

trial must be granted if any of plaintiff's several theories of liability was improperly presented to the jury, because one cannot determine on which of the theories the jury relied in reaching its verdict." The District did not request that the trial judge proceed by special verdict or interrogatories to the jury, nor did it take any other steps in the trial court to avoid the problem of which it now complains.

We need not decide, however, whether the District's silence below forecloses the contention which it now presents on appeal. Mr. Murphy's testimony, when viewed, as it must be, in the light most favorable to Bethel,[3] supports the claim that the District violated the applicable standard of care in each of the enumerated respects. Mr. Black's testimony substantially corroborates Mr. Murphy's on several issues. We are satisfied that none of Bethel's theories was improperly presented to the jury.

There is no question that some of the theories of negligence on which Bethel relies present complex issues relating to proper prison administration. One, in particular, merits additional discussion. The District argues that ACA Standard 2–4205, which proposes that prisons adopt written policies and procedures providing that "no inmate or group of inmates is given control or authority over other inmates," was intended to address such serious problems as arming "trusties" and using them to guard other inmates at penal facilities.[4] Standard 2–4205, the District therefore insists, cannot properly be utilized as a predicate for a finding that it was negligent in allowing Bethel to supervise other prisoners with respect to such comparatively mundane activities as dispensing soap.

There was testimony in this record, however, from which the jury could conclude that the control and authority given to Bethel were quite substantial. Bethel swore in his answers to interrogatories, which were read into the record, in part, by counsel for the District, that he made all the

---

**3.** *See, e.g., Bauman v. Sragow*, 308 A.2d 243, 244 (D.C.1973) (*per curiam*).

**4.** *See, e.g., Hutto v. Finney*, 437 U.S. 678, 682 n. 6, 98 S.Ct. 2565, 2569 n. 6, 57 L.Ed.2d 522 (1978) and *Gates v. Collier*, 501 F.2d 1291, 1307 (5th Cir.1974), for descriptions of such practices.

decisions in the bathhouse. He also testified that

> [t]here's no place in Lorton that police run. That job is given to the inmates. That job was given to me. It was my responsibility to make sure that everything in the bathhouse was done.

Bethel also claimed that he had possession of the key to the bathhouse and opened and closed the facility without staff supervision.

James Murphy, the plaintiff's expert witness, testified in response to a hypothetical question that it was not proper penological practice to assign such authority to an inmate. James Black, the District's expert, agreed. Given the testimony as to the extensive authority which was said to have been given to Bethel and the opinions of both expert witnesses, we cannot agree with the District that the evidence on this issue was insufficient to go to the jury.

We emphasize, however, that we base our conclusion to this effect solely on the present record, as developed in this litigation by Bethel and the District. Lest our opinion be misunderstood, we do not adopt or articulate any general rule, and especially no rule conclusive on other litigants on a different record, that it constitutes negligence *per se* to permit one prisoner to exercise any incidental control over what another prisoner may receive. Nothing in this opinion should be construed, for example, to suggest that it would be negligence on the part of the District to permit a prisoner who is working on the "chow line" to refuse another inmate's demand for a double portion of dessert, or that the District is required to engage the services of civilians for the numerous jobs which inmates are routinely called upon to perform.[5]

## V

One of the District's defenses at trial was that Bethel was contributorily negligent. The District argued that Bethel had slapped Carter during the two men's altercation, and that he therefore should have known that he was in danger of retaliation. Accordingly, says the District, Bethel should have requested protective custody or taken some other step to obtain protection from the institution, and his failure to do so constituted contributory negligence which proximately caused his injuries. This theory was not without its problems,[6] and it was rejected by the jury in its verdict.

In connection with the defense of contributory negligence, the District presented the testimony of Correctional Officer Adrienne L. Poteat, who had investigated the assault. Officer Poteat testified that Bethel told her that he had slapped and shoved Carter during the altercation between the two men. On cross-examination, counsel for Bethel asked a number of questions

5. The causal nexus between Bethel's injuries and some of the claims of negligence might arguably be viewed as somewhat attenuated. With the single exception discussed below, however, the District has not challenged on appeal the sufficiency of the proof of causation, nor has it asserted that the chain was broken by Carter's intervening criminal act or questioned the amount of damages awarded.

The District does argue, however, that Bethel did not prove any injury from its allegedly unreasonable delay in its response to the emergency. Obviously, since that delay came after the stabbing, not all of Bethel's injuries or suffering could be attributed to it, and it blinks reality to suggest that the jury's entire award could have been based on this alleged violation of proper penological standards.

Had the District requested an instruction to the effect that damages for the allegedly delayed response must be restricted to any incremental pain and suffering or other damage attributable to that delay, rather than to the stabbing, it might well have been entitled to one. No such request was made, however, and we cannot say that, as a matter of law, the alleged delay could not have added to Bethel's suffering.

6. The encounter between the two inmates was witnessed by an officer who obviously did not view it as requiring any action. There was also testimony that Bethel and Carter resolved their differences immediately after the incident. In any event, the suggestion that every minor altercation between inmates warrants a request for protective custody, or some equivalent measure, and that an inmate is negligent in not requesting such protection even when the underlying incident was witnessed by a correctional officer who took no action, is one which a reasonable jury might well reject. The District's own expert testified unfavorably to the District on this issue.

which, according to the District, cast doubt on the credibility of Officer Poteat's account.[7] On redirect examination the District sought to introduce as a prior consistent statement Officer Poteat's notes, in which she quoted Bethel as having acknowledged, with an obscene reference to Carter, that he had slapped and pushed him.

 In general, prior consistent statements are inadmissible to bolster the testimony of an unimpeached witness, *Williams v. United States,* 483 A.2d 292, 296 (D.C.1984), *cert. denied,* 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985), for repetition does not imply veracity. *Reed v. United States,* 452 A.2d 1173, 1180 (D.C. 1982), *cert. denied,* 464 U.S. 839, 104 S.Ct. 132, 78 L.Ed.2d 127 (1983). An exception to this rule permits the introduction of a prior consistent statement to rehabilitate a witness whose credibility has been undermined "by a specific suggestion of fabrication or of a motive to lie." *Williams, supra,* 483 A.2d at 296; *see also Sweat v. United States,* 540 A.2d 460, 462 (D.C. 1988); *Rease v. United States,* 403 A.2d 322, 328 n. 7 (D.C.1979). The trial judge has broad discretion with respect to the admission or exclusion of prior consistent statements. *United States v. Hamilton,* 689 F.2d 1262, 1273 (6th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 754, 74 L.Ed.2d 971 (1983); *see Sweat, supra,* 540 A.2d at 464.

 In the present case, we think the trial judge could quite reasonably conclude that there was no specific suggestion of fabrication or of a motive to lie in counsel's cross-examination of Officer Poteat. Moreover, Officer Poteat's report, which was admitted into evidence, contained essentially everything which was in her notes, except for Bethel's alleged profanity. Consequently, admission of the notes would have been cumulative.

A trial judge has considerable discretion with respect to the admission or exclusion of cumulative evidence. *See generally* I. & A. Gard, JONES ON EVIDENCE § 1.5 (6th ed. 1972 & Supp.1989), and authorities there cited. Evidence which adds little of probative value to the record may be excluded in order to avoid a waste of time, *Mitchell v. Keith,* 752 F.2d 385, 392 (9th Cir.), *cert. denied,* 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985), or, as Justice Holmes put it more than a century ago, as "a concession to the shortness of life." *Reeve v. Dennett,* 145 Mass. 23, 28, 11 N.E. 938, 943–44 (1887). There was no abuse of discretion on this record.

## VI

 The District contends that Bethel's attorney misstated the evidence during closing argument, and that it is therefore entitled to a new trial on the issue of damages. Specifically, the District faults opposing counsel for arguing that both expert witnesses agreed that Bethel had a 75% disability, whereas in fact, according to the District, its own expert testified that Bethel had only a 25% disability.

At the conclusion of the presentation by Bethel's own attorney, counsel for the District asked to approach the bench. He then told the judge that according to the expert's report, "Mr. Bethel is 75 percent normal, not 75 percent disabled. I would like Mr. Shapiro to correct that representation to the jury." Counsel also attempted to allude to his own pretrial conversations with the expert, but was not permitted to do so by the judge. The judge stated that "the testimony was that it was a 75 percent deficit, as I recall," [8] but that counsel could

---

7. The District claims in particular that impeachment of Officer Poteat occurred when counsel for Bethel attempted to establish that if Bethel had slapped Carter, then the correctional officer who was present would have written a disciplinary report citing Bethel for misconduct.

8. The record with respect to what the District's expert, Dr. Barber, said, and especially as to what he meant, is somewhat cloudy. Dr. Bar-

ber initially testified on direct examination that "I estimated [Bethel's] disability to be around 75 percent." He repeated the same estimate a few moments later. He also indicated that the disability would be greater if Bethel were a laborer rather than a clerical worker. On cross-examination, however, when asked his opinion of the impairment of Bethel's ability to work as a file clerk, Dr. Barber responded: "Yes. As I estimated, for 20—impaired by 25 percent." Coun-

"of course" argue the contrary, if counsel's recollection was different. Counsel later argued to the jury as follows:

> You heard Mr. Shapiro say that Dr. Barber [the District's expert] has stated that Mr. Bethel is 75 percent disabled. Dr. Barber has submitted a report, and his report will speak for itself. That is not my recollection as to Mr. Bethel's testimony. However, I would leave that to your judgment as to the degree of disability that Mr. Bethel may have, based on Dr. Barber's assessment.

The judge instructed the jury that statements of counsel are not evidence, and that if he or counsel had made any reference to the evidence which did not coincide with the jurors' recollection, then "it is your memory which should control during your deliberations."

In evaluating the District's position on appeal, it is important to emphasize, paraphrasing *Irick v. United States*, 565 A.2d 26, 33 (D.C.1989), that "although [the District's] complaint is primarily with [Bethel's attorney], it is our function to review the record for legal error or abuse of discretion by the trial judge, not by counsel." The only relief ever requested by the District was that Bethel's attorney be directed to correct his allegedly erroneous statement in front of the jury. The District never demanded a mistrial, nor did it object to the trial judge's resolution of the issue—to allow counsel for the District to state his contrary recollection—as insufficient. A litigant cannot obtain from an appellate court relief broader and more drastic than that sought in the trial court. *D.D. v. M.T.*, *supra; see also Prokey v. Hamm*, 91 N.H. 513, 517, 23 A.2d 327, 330 (1941) (where counsel objected to adversary's statement in argument as improper, but requested no relief from the court when opposing coun-

sel explained the basis for the statement, "the situation presents no question of law for us to pass upon"); *Congiardo v. Bordenaro*, 106 Ill.App.2d 374, 374–75, 245 N.E.2d 884, 885 (1969) (misstatement of testimony of witness by counsel in argument to jury did not require reversal where attorney was merely stating his recollection of testimony and it was for jury to determine what had been testified to).[9]

In *Simpson v. Stein*, 52 App.D.C. 137, 139, 284 F. 731, 733 (1922), it was held that to warrant reversal of a judgment because of improper argument to the jury, the court must be satisfied not only that there was misconduct by counsel but also that, after objection,

> the court, by failing to apply appropriate disciplinary measures or to give suitable instructions, left the jurors with wrong or erroneous impressions, which were likely to mislead, improperly influence, or prejudice them to the disadvantage of the defendant.

*Accord, Meyer v. Capital Transit Co.*, 32 A.2d 392, 393 (D.C.1943). As the Supreme Court explained in a case decided in the last century,

> [i]f every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation.

*Dunlop v. United States*, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799 (1897).[10]

If the District's expert accidentally misspoke, then this is certainly unfortunate. Nevertheless, on this record, the District has failed to prove misconduct, or a proper objection to the court's ruling, or inade-

---

sel for the District never cleared up the apparent discrepancy. Dr. Barber's written report, which was received in evidence, states in pertinent part: "Disability 11.08 (spinal cord with motor involvement of two extremities.) Estimated 75% of normal. Could work as file clerk."

We think that the judge's recollection of the testimony was not clearly erroneous, and that

Bethel's counsel had a *bona fide* basis for making his argument.

**9.** This decision was published in abstract only.

**10.** The phenomenon on which the Court was commenting has not disappeared in the ninety-two years that have elapsed since *Dunlop* was decided.

quate action by the trial court, or prejudice. Counsel for the District was permitted to counter his adversary's understanding of the evidence with his own, and the lack of clarity in the testimony of its own expert, see note 8, *supra*, must be laid at the feet of the District. Dr. Barber's report was admitted into evidence, and the jury was able to examine it. The judge properly instructed the jury. Reversal would consequently be inappropriate.

## VII

For the foregoing reasons, the judgment appealed from is hereby

*Affirmed.*