Belknap,
May 4, 1943. } No. 3404.

VINA G. HANSON, *Adm'x v.* ROGER N. BLAKE, *Adm'r.*

SAME *v.* SUNCOOK VALLEY RAILROAD.

ROGER N. BLAKE, *Adm'r v.* SUNCOOK VALLEY RAILROAD, & a.

*Errol S. Hall* and *William N. Rogers* (*Mr. Hall* orally), for Vina G. Hanson, Adm'x.

*Harold E. Wescott* (by brief and orally), for Roger N. Blake, Adm'r, as plaintiff.

*Murchie & Murchie* (*Mr. Alexander Murchie* orally), for Roger N. Blake, Adm'r, as defendant.

*Cheney, Nighswander & Lord* and *Jewett & Jewett* (*Mr. Theo S. Jewett* orally), for the Suncook Valley Railroad and Boston & Maine Railroad.

BRANCH, J. The exception of Roger N. Blake, Adm'r, as plaintiff, to the granting of a directed verdict in favor of the Boston & Maine Railroad has not been briefed or argued, and is understood to be waived. The exception of Roger N. Blake, Adm'r, to the granting of a directed verdict in favor of the Suncook Valley Railroad will be first considered.

1. The accident happened after dark upon December 9, 1939. It was a clear, fair night. The headlight of the locomotive was shining brightly. The regulation locomotive crossing whistle was given and the engine bell was ringing. Both the train and the automobile were going about twenty-five miles per hour. The driver of the automobile paid no attention to the warnings of the locomotive headlight, bell and whistle, and did nothing to reduce his speed before the collision. It was conceded in this court by counsel for his administrator that he was negligent, but it is contended that his case should have been sent to the jury under the last chance doctrine.

The argument rests chiefly upon the somewhat contradictory testimony of the fireman called as a witness by the plaintiff, Vina G. Hanson, Adm'x. He testified on direct examination that he first saw the automobile when it was seventy-five or one hundred feet from the crossing and that the train was also seventy-five to one hundred feet from the crossing at that time; that both the automobile and the train were traveling at about the same speed, namely, twenty-five miles per hour; that he watched the automobile until he saw that it was not going to stop and then signalled the engineer to stop, that the automobile was then about ten feet from the crossing. This evidence, unless controlled by other testimony in the case, fully justified the action of the trial court in refusing to submit

to the jury the issue of the last clear chance. Upon this version of the occurrence it is evident that the negligence of Hier continued up to the moment of the accident and that the fireman was not chargeable with notice of his inattention until it was too late to do anything to avoid the accident.

The plaintiff, however, relies upon certain other testimony of the fireman that he saw the automobile just as soon as he reached a point where he could do so, coupled with the testimony of a surveyor that this point was one hundred and eighty feet from the crossing, and argues from this testimony that a much longer period of time elapsed after the fireman discovered the approach of the automobile than his direct testimony, summarized above, would indicate. There is nothing, however, in the testimony to cast any doubt upon the fireman's statement that the automobile, when he first saw it, was seventy-five to one hundred feet from the crossing. It is, of course, indisputable that the train and the automobile arrived at the crossing at the same time. Consequently the testimony that the train was one hundred and eighty feet from the crossing when the automobile was discovered would merely indicate that the speed of the train was considerably greater than that given by all the witnesses in the case who testified upon this point. The time required for the automobile to traverse the distance of seventy-five to one hundred feet to the crossing at a speed of twenty-five miles per hour, *i.e.*, less than three seconds, conditioned any possible efforts to avert the collision.

The case is very much like *Jones* v. *Railroad*, 83 N. H. 73, where "the only real chance of avoiding an accident . . . lay with the truck driver," and where "a blast on the whistle . . . was the most promising kind of 'protective action' which the engineer could have chosen." Yet this is precisely the course of action pursued by the engineer without any knowledge of the danger, for the evidence is uncontradicted that, in compliance with the statute (R. L., c. 299, s. 25), he prolonged the crossing whistle until the crossing was reached. During all this time the automatic bell was also ringing. In short, the uninformed action of the engineer resulted in taking the steps most likely to avert the accident, and the evidence falls far short of disclosing that clear opportunity to avoid the accident by stopping the train which the last chance doctrine, as here understood, requires. *Morrison* v. *Railroad*, 86 N. H. 176, 180; *Ramsdell* v. *Company*, 86 N. H. 457. As was said in *Morrison* v. *Railroad*, *supra:* "There is no evidence of any causal failure to use care on the part of the fireman or engineer after the decedent's inattention was

first noticed. The time was too short in which to slow the train's speed so the truck [automobile] might safely pass over the crossing ahead of it. The fireman's warning was given as soon as the inattention was observed. The engineer applied the brakes as soon as he received the warning. The evidence tends to show nothing to the contrary. The plaintiff's position defies the natural limitations on the speed of the mental and physical activities of human beings. The last chance must be a clear one, reasonably found to be fairly given." In the case of *Roger N. Blake, Adm'r* v. *Suncook Valley Railroad and Boston & Maine Railroad*, the plaintiff's exception is overruled.

2. During the argument of counsel for Vina G. Hanson, Adm'x, to the jury, the following proceedings took place: "*Mr. Rogers:* And so you have the testimony in this case of Brien, the fireman, Jenkins, the brakeman, McAllister, the trainman, of Mrs. Susan J. Kimball who lived right near the crossing, who all tell you that the warning was given, — and on all the evidence in the case, this man, with something else on his mind, — and we all get that way some times, — this man, — not only this man but I don't believe but what every man is at times a little careless and may drive on or over a crossing, I argue to you as a matter of common knowledge. *Mr. Murchie:* I object to that argument. *Mr. Rogers:* May I have it stricken out, Your Honor? *The Court:* All right, strike it out. *Mr. Murchie:* Note my exception just the same, please."

Under the rule which prevails in this state as developed in *Tuttle* v. *Dodge*, 80 N. H. 304, and *Whipple* v. *Railroad*, 90 N. H. 261, the above exception presents no question of law. "An exception involving the propriety of argument to the jury will not be considered by this court unless it clearly appears that it was taken to the refusal of the court to sustain an objection." *Whipple* v. *Railroad, supra*, 266. Here the only ruling of the court was embodied in the words, "All right, strike it out." Clearly these words could not be construed as sanctioning the argument or as overruling the defendant's objection thereto. The exception is, therefore, overruled.

3. The defendant seasonably moved to set aside the verdict as excessive. No exception was taken to the charge of the court, which correctly stated the rule of damages laid down in *Humphreys* v. *Ash*, 90 N. H. 223. Defendant's argument now is that "In order to figure present worth, after determining the issue of expectancy, the final amount, and the proper rate . . . , the jury must have been furnished with the Accountant's Hand Book . . . or have been able

to do it by using a slide rule or logarithm tables. That no average juror could be so supplied or have such competence needs no argument." In other words, although no exception to the charge was taken, the defendant now argues, in substance, that it was erroneous in that it enunciated a rule of damages which the jury was incapable of applying. Questions of this kind cannot be raised by a motion to set aside a verdict. *Bennett* v. *Larose*, 82 N. H. 443. "The rule is based upon the sound reason that justice requires that the question should be raised while, theoretically at least, the deficiency may yet be supplied." *Bennett* v. *Larose, supra*, and cases cited.

It may be said, however, that defendant's argument is intrinsically unsound. It is believed that a jury is capable of understanding the fact that the present value of a series of payments to be received over a long period of time is less than the aggregate amount of those payments, and can be made to understand something of the process of discounting such aggregate amount "according to standard investment practices," so as to arrive at its present worth. *Roussin* v. *Blood*, 90 N. H. 391. Complete accuracy in making such a calculation is not required.

In this case the decedent, Carl Hanson, had a findable expectancy of forty-eight years, or about thirty-nine years after reaching majority. The computation of an accountant employed by the defendant indicates that, assuming an interest rate of three per cent, the verdict would represent an actual loss to the plaintiff of $19,-687.25. We are unable to say, as a matter of law, that this amount is excessive as compensation for the loss of the savings of a lifetime.

*Exceptions overruled.*

All concurred.