Belknap
No. 91-486

WHISPERING SPRINGS TENANT ASSOCIATION

v.

JAMES AND BARBARA BARRETT & a.

May 14, 1993

*Schroeder, McLetchie & Clough*, of Ossipee (*Erland C.L. McLetchie* on the brief and orally), for the plaintiff.

*Nighswander, Martin & Mitchell*, of Lebanon (*Mark A. Larsen* on the brief and orally), for the defendants.

HORTON, J. The plaintiff appeals the decision of the Superior Court (*O'Neil*, J.) awarding it the minimum damages available under the penalty provisions of RSA 205-A:22. The defendants, owners of a manufactured housing park, cross appeal a decision of the Superior Court (*Dickson*, J.), on cross-motions for summary judgment, finding them liable under RSA 205-A:21 for failing to provide their tenants with the statutorily required 60-day notice of their intent to sell the park. We affirm both decisions.

The plaintiff is the incorporated tenants' association for Whispering Springs manufactured home park in Alton. The defendants are James and Barbara Barrett, the sellers of the park, and George Pessotti, the assignee of the buyer of the park. The Barretts, on March 10, 1987, contracted to sell the park to Robert Dion. It is undisputed that the sellers never notified their tenants that they intended to sell the park or that they had contracted to do so. In the first week of June 1988, the Barretts conveyed the park to Dion's assignee, defendant George Pessotti, trustee of the Sherlock Holmes Realty Trust. The tenants learned of the sale only when the new owner introduced himself to them.

The dispute between the parties centers on the applicability of RSA 205-A:21, which requires owners of manufactured housing parks to give their tenants notice of their intent to sell their parks.

The statute requires such notice to be given 60 days before the owner makes a final, unconditional acceptance of any offer to buy the park. RSA 205-A:21 took effect on May 26, 1987, roughly two months after the sellers and Dion had signed the initial purchase and sale agreement for the park. The parties agree that the sellers had no duty to notify the tenants of their intent to enter into the initial agreement. The parties, however, dispute the effect of three changes Dion and the sellers made to the initial agreement subsequent to the passage of RSA 205-A:21. The plaintiff claims that the three changes constituted new agreements and, therefore, triggered the notice requirements of RSA 205-A:21. The defendants, arguing that the three changes were only modifications of the initial agreement, claim that the original agreement was the "final" offer on the park, creating no duty to provide notice to the park's tenants.

The superior court ruled that one such change, a May 11, 1988, price reduction from $450,000 to $400,000, constituted an acceptance of a new offer requiring statutory notice, and held the defendants liable under RSA 205-A:21. It further found that the initial agreement had expired by its terms prior to the first modification, which was well after the effective date of RSA 205-A:21. The court awarded the plaintiff damages of $10,000 pursuant to RSA 205-A:22, which provides that a park owner failing to provide notice to the park's tenants "shall be liable to the tenants in the amount of $10,000 or 10 percent of the amount realized by the seller after all liens on the property existing at the time of sale were satisfied." The amounts upon which the penalty may be calculated are substantially agreed upon. The selling price was $400,000. An outstanding mortgage lien existed in the amount of $77,376.34. The plaintiff acknowledges an appropriate deduction for closing costs and tax proration totaling $26,778.50. The $295,845.16 balance was paid, in part, by the execution and delivery of a purchase money second mortgage note in the face amount of $225,000.

The plaintiff asserts that the penalty should be $29,585, *i.e.*, 10 percent of the sum of the net cash received and the face value of the mortgage. The defendants, claiming an absence of harm to the plaintiff, suggest that calculation of the penalty amount should be governed by equitable considerations. They argue that the $10,000 penalty is excessive as ordered. Further, the defendants suggest that the only "amount realized" after liens was the cash payment, net of the purchase money mortgage note.

We first consider whether the need for compliance with the notice provisions of RSA 205-A:21, I, was triggered by the changes to the

acquisition agreement made after the effective date of that statute. The statute states, in pertinent part:

> "No manufactured housing park owner shall make a final unconditional *acceptance of any offer* for the sale or transfer of a manufactured housing park without first giving 60 days' notice to each tenant . . . ."

(Emphasis added.) The defendants contend the original agreement was the sellers' "final unconditional acceptance" of an offer; the subsequent changes were modifications to the final agreement, creating no liability, because the offer and acceptance occurred before the effective date. In contrast, the plaintiff contends the changes were new and separate agreements, triggering the statute's notice requirements.

The trial court found that by signing the May 11, 1988, purchase price reduction, the defendant sellers were accepting a new offer and the statutory notice provisions were triggered. The trial court added, "[T]o rule otherwise would render the statute meaningless; park owners could notify tenants of an 'acceptable' sale price and then accept a substantially lower offer without giving the tenants notice or an opportunity to make their own offer." Based on the lower price acceptance alone, we agree that the notice provision was triggered.

▮▮ Although, technically, any modification to a contract requires acceptance, *see* RESTATEMENT (SECOND) OF CONTRACTS § 279 comment *a* (1981), the acceptance relied on by the trial court was acceptance of a provision material to the purpose of the statute. After the formal notice provisions in RSA 205-A:21, I, which include notice of price, terms and conditions, RSA 205-A:21, II envisions an opportunity for the tenants to make an offer and, in such event, charges the owner with the obligation to consider the tenant offer and to negotiate in good faith toward a potential tenant purchase. Modifications of price, terms and conditions proposed for park sale agreements that reasonably may affect the tenants' exercise of these rights must be noticed prior to acceptance.

The defendants point to RSA 205-A:1, VII, which defines a final unconditional *offer* as "a fully executed agreement for the sale of a manufactured housing park." They urge us to apply this definition to the RSA 205-A:21, I, notice provision, which speaks of sixty days' notice prior to final unconditional *acceptance*. They argue that the initial agreement was the only final, fully executed agreement, and, therefore, the subsequent changes gave rise to no duty to provide the

tenants with notice. We disagree. We will not read the RSA 205-A:1, VII definition to mean anything but what it says. It clearly and unambiguously refers to an offer, and we will not read that to mean "offer and acceptance."

The defendants recite the history of legislative changes to the bill enacting RSA 205-A:21. They note that renotification provisions in the original legislation were dropped in the final bill. They argue that this court should infer from this change a manifestation of legislative intent that housing park owners not be saddled with the cost of renotifying their tenants of every change in an agreement to sell a park. This argument may be persuasive in regard to modifications that are without bearing on the purposes of the statute. RSA 205-A:21, I(b), however, clearly states that the tenants must be notified of the "price, terms, and conditions of an acceptable offer." We are not moved by the defendant's argument in those instances when renotification would involve notice of price or other essential terms, which, if known to the tenants, might cause them to invoke the additional owner obligations under the statute. We will not infer a legislative intent to cripple the express statutory purpose. *See Chroniak v. Golden Investment Corp.*, 133 N.H. 346, 350–51, 577 A.2d 1209, 1213 (1990).

■ The defendants argue that the changes made to the agreement subsequent to the passage of RSA 205-A:21 were extensions of the initial agreement and that the buyer was exercising rights found within the four corners of the agreement. The material change lowered the purchase price from $450,000 to $400,000, a change not contemplated by the initial agreement.

We now turn to the issue of the penalty. The parties dispute what amount, if any, of the $225,000 note held by the sellers was realized by the sellers at the time of sale. Absent value assigned to this note, the amount realized by the sellers would support only the minimum $10,000 penalty. The correct valuation of the note was its present value, and the trial court properly awarded the statutory minimum damages of $10,000 because the plaintiff failed to present any evidence, beyond face value, face terms and apparent security, of the present value of the note.

■ RSA 205-A:22 provides that a park owner failing to comply with the notice requirements of RSA 205-A:21 shall be liable to the tenants "in the amount of $10,000 or 10 percent of the amount realized by the seller after all liens on the property existing at the time of sale were satisfied." The only material amount at issue is the

$225,000 note held by the sellers. The plaintiff argues that the entire face value of the note should be added when calculating the amount realized by the sellers, which would boost the award of damages to roughly $29,585. The most appropriate valuation of the note is its present value, determined by its interest rate, duration, credit-worthiness, security and other factors, *see generally* HANDBOOK OF MODERN FINANCE 16–29 to 16–43, 25–3 to 25–31 (D. Logue ed., 1984), which is analogous to its cash value.

The plaintiff, as the party claiming injury under a statute providing a civil penalty, had the burden of proving, by the preponderance of the evidence, that it was entitled to the appropriate and applicable damages and penalties. *Cf. Peaslee v. Koenig*, 122 N.H. 828, 830, 453 A.2d 832, 833 (1982) (civil penalty does not require proof beyond a reasonable doubt). The findings and rulings of the trial court will be "sustained unless they are lacking in evidential support or tainted by error of law." *Averill v. Dreher-Holloway*, 134 N.H. 469, 472, 593 A.2d 1149, 1151 (1991) (quotation omitted). The record reveals incomplete evidence of the note's present value. The record contains no evidence of market rate, creditworthiness of the borrower, or value of the security, particularly in light of the subordinated position of the security. Lacking sufficient evidence of the present value of the $225,000 note, the plaintiff failed to meet its burden of proving the note's present value, and the trial court was within its discretion to omit the note from its penalty calculation. The award to the plaintiff of the statutory minimum of $10,000 was appropriate and will be sustained.

The defendants argue that RSA 205-A:22 provides the trial court with the discretion to award a plaintiff damages in any amount so long as they do not exceed $10,000 or 10 percent of the amount realized by the park owners. Contrary to the defendants' argument, the court has no discretion in setting damages pursuant to RSA 205-A:22. The statutory language at issue is:

"The owner . . . shall be liable to the tenants in the amount of $10,000 or 10 percent of the amount realized by the seller after all liens on the property existing at the time of sale were satisfied. The total of damages to all tenants, in the aggregate, shall not exceed $10,000 or 10 percent, whichever is greater, of the amount realized by the seller after all liens on the property existing at the time of sale were satisfied."

We have long held "that the meaning of a statute is determined from its construction as a whole and not by construction of

isolated words and phrases." *King v. Town of Lyme*, 126 N.H. 279, 284, 490 A.2d 1369, 1372 (1985) (quotations omitted). The defendants focus on the language stating that the award "shall not exceed" $10,000 or 10 percent. Although we agree that the words "shall not exceed" resonate with discretion, reading the two sentences in conjunction leads to the conclusion that the court has no discretion in determining damages under RSA 205-A:22. The first sentence defines the formula by which the trial court must calculate damages. The legislature, however, intended that the liability of park owners be neither unlimited nor nominal. The second sentence, therefore, sets the cap of the award when multiple tenants are involved.

Finally, the plaintiffs argue that the damages should be awarded to the tenants' association. The superior court properly followed the dictates of RSA 205-A:22, which states that the "owner of a manufactured housing park . . . shall be liable to the tenants," and ordered the damages awarded to the tenants of record at the time of the violation.

In summary, we find that the trial court properly found the defendants liable under RSA 205-A:21 and that its award of the statutory minimum damages was appropriate. Accordingly, we affirm.

*Affirmed.*

All concurred.