Marilyn **HUTTON**

v.

**ESSEX GROUP, INC.**

**Civ. No. 91–667–JD.**

United States District Court,
D. New Hampshire.

Dec. 30, 1994.

**332**

Edward M. Kaplan, Sulloway & Hollis, Concord, NH, for Marilyn Hutton.

Edward A. Haffer, Sheehan, Phinney, Bass & Green, P.A., Manchester, NH, Roberta Recker, Baker & Daniels, Indianapolis, IN, for Essex Group, Inc.

## ORDER

DiCLERICO, Chief Judge.

The court understands from correspondence of counsel that the lawsuit brought by Carole Miesowicz has been settled, leaving Marilyn Hutton as the sole plaintiff in this action. Before the court is the defendant's motion in limine to bar introduction of evidence related to the plaintiff's claim for front pay damages (document no. 50).

## Discussion

The plaintiff seeks to recover "front pay" damages based on the loss of future earnings allegedly caused by her wrongful termination from the defendant's employ. In its motion, the defendant argues that wrongful termination is considered a contract and, as a result, front pay is proscribed or, in the

alternative, should be limited in scope temporally.

## I. Wrongful Termination is a Tort

■ Under *Erie v. Tompkins* and its progeny, state law governs the substantive aspects of this diversity case. *See* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where a particular issue has not yet been definitively decided by either the state legislature or judiciary, the court is obligated to " 'vaticinate' what the decision of the state supreme court would be 'were that court faced with the issue.' " *Goss v. Heisler*, No. 90–426–SD, slip op. at 13, n. 5 (D.N.H. July 16, 1991) (quoting *McInnis v. Harley–Davidson Motor Co.*, 625 F.Supp. 943, 946 (D.R.I. 1986)).

■ The New Hampshire Supreme Court has not directly addressed the question of whether a lawsuit for wrongful termination arises in tort or contract. *See Vandegrift v. American Brands Corp.*, 572 F.Supp. 496, 499 (D.N.H.1983) (discussing unsettled nature of New Hampshire wrongful discharge law). However, in *Cloutier v. Great A & P Tea Co.*, the supreme court outlined the elements of a *prima facie* wrongful termination claim and, in so doing, both the majority opinion and a two-justice dissent referred to the cause of action as a "tort." 121 N.H. 915, 920–22, 925, 436 A.2d 1140, 1143–44, 1146 (1981).

The defendant argues that the use of the term "tort" in *Cloutier* was either dictum or otherwise in error. The court acknowledges that the supreme court, in *Cloutier* and cases decided before and after it, has neither spoken consistently nor clearly on the nature of the wrongful discharge claim. However, until the supreme court addresses the issue directly in the context of a wrongful termination claim, and not merely by way of comparison or analogy, *e.g., Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 140, 562 A.2d 187, 191 (1989), the court will view the language of *Cloutier* as a purposeful statement that wrongful termination is a tort.[1]

---

1. The court notes that the supreme court's characterization of wrongful termination as a tort places New Hampshire in the majority of states that have considered the issue. *See* Stuart Speis-

er, Charles Krause, & Alfred Gans, 10 The American Law of Torts (1993) § 34:86 (listing jurisdictions); Michael A. DiSabatino, Annotation, Modern Status of Rule that Employer May Discharge

## II. Front Pay

The parties disagree on whether the plaintiff is entitled to claim front pay damages, whether such damages must be discounted to present value if allowed, whether expert testimony is required on the issue of discounting and, finally, which party must produce an expert if one is needed.

■ The court applies state-law remedies in federal diversity actions. *E.g., Titan Holdings Syndicate v. City of Keene, N.H.,* 898 F.2d 265, 273 (1st Cir.1990); *Johnson v. Watts Regulator Co.,* No. 92–508–JD, slip op. at 12, 1994 WL 587801 (D.N.H. Oct. 26, 1994). In New Hampshire, a plaintiff who prevails in tort is entitled to recover compensatory damages "that will restore him as nearly as possible to the position he would have been in if the wrong had not been committed." *Smith v. Cote,* 128 N.H. 231, 243, 513 A.2d 341, 348 (1986) (quoting *Emery v. Caledonia Sand & Gravel Co.,* 117 N.H. 441, 447, 374 A.2d 929, 933 (1977)); *see Townsend v. Bernson,* No. 89–520–SD, slip op. at 5 (D.N.H. May 13, 1993); Restatement (Second) of Torts § 901 cmt. a. (1977) ("[T]he law of torts attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort."). The court rules that lost future lost earnings are an appropriate element of damages in a wrongful termination action.[2]

■ In New Hampshire, when a plaintiff recovers for future economic loss, the recovery is reduced to present value.

The measure of a lump-sum award for future pecuniary losses arising from a tort is the present worth of the full amount of the loss of what would have been received at the later time.

Restatement (Second) Torts § 913A (1977); *see Humphreys v. Ash,* 90 N.H. 223, 230–31, 6 A.2d 436, 440–41 (1939) (citing Restatement, Torts § 924(d)). In general, courts reduce awards to their present value in order to restore a plaintiff to his pre-harm status while preventing a windfall recovery. *See, e.g., Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 535–45, 76 L.Ed.2d 768, 103 S.Ct. 2541, 2550–55 (1983) (damages for future earnings should be reduced to present value); *Quinones–Pacheco v. American Airlines, Inc.,* 979 F.2d 1, 7 (1st Cir.1992) (citations omitted); *Martineau v. City of Concord, New Hampshire,* No. 93–268–M, slip op. at 3, 1994 WL 587832 (D.N.H. Oct. 24, 1994); *Humphreys v. Ash,* 90 N.H. at 230–31, 6 A.2d at 440–41.

The plaintiff argues that a jury "may properly determine the rate of interest to be used in discounting ... without evidence of a specific rate." Plaintiff's Memorandum at 8. The plaintiff relies on several aged decisions of the New Hampshire Supreme Court, beginning with *Humphreys v. Ash,* in support of the proposition that the appropriate rate for discounting is within the "common knowledge" of the jury. *Id.* at 8–9 (quoting *Adams v. Severance,* 93 N.H. 289, 298, 41 A.2d 233, 239 (1945); *Roussin v. Blood,* 90 N.H. 391, 393, 10 A.2d 224, 226 (1939)).

At–Will Employee For Any Reason, 12 A.L.R.4th 544, §§ 4[a], [b] (1982 & Supp.1994) (same).

**2.** The defendant asserts that the availability of front pay damages undermines the recognized principle that an employer is entitled to arbitrarily discharge an at-will employee at any time. Defendant's Motion at 3 (citing *Butler v. Walker Power, Inc.,* 137 N.H. 432, 437, 629 A.2d 91, 93 (1993)). The defendant argues that because there is "no presumption that [an at-will hiring] was for a day even," there can be no logical basis upon which a court can predicate future earnings. *Id.* (citing *Cloutier,* 121 N.H. at 919, 436 A.2d at 1142).

The argument has appeal but fails nonetheless. The very nature of a wrongful termination claim is that the plaintiff was fired in violation of

public policy, the only basis upon which an at-will employee may *not* be terminated. An award of front pay does not threaten the concept of at-will employment because a finding of wrongful termination liability (i.e. a violation of public policy) takes the employment relationship outside the sphere of those relationships in which an employer is shielded from liability by his employee's at-will status. Thus, so long as the employer does not violate public policy, it will not face an award of front pay and, as such, the at-will employment concept will continue to serve its traditional role. Moreover, an award of front damages *promotes* respect for public policy and the goals of tort damages, namely to compensate injured parties, punish wrongdoers, and deter wrongful conduct and retaliation. *See* Restatement (Second) § 901 & cmts (listing general principles of tort damages).

■ *Humphreys v. Ash* and its progeny have not been overruled and continue to stand for the now widely accepted view that future damages should be discounted. However, the court has serious questions concerning the continued vitality of the proposition that a jury can determine an appropriate percentage rate for discounting absent an evidentiary basis on which to do so.[3] Although the New Hampshire courts have not addressed the issue explicitly for decades, *Davis v. Browning–Ferris Industries, Inc.,* 898 F.2d 836, 837 (1st Cir.1990), in practice evidence is generally required whenever a jury is asked to reduce future damages to present value, *e.g., Whispering Springs Tenant Assoc. v. Barrett,* 137 N.H. 203, 208, 624 A.2d 1345, 1349 (1993). In *Whispering Springs,* the court held that damages based on a mortgage note could not be properly awarded where

> [t]he record reveals incomplete evidence of the note's present value. The record contains no evidence of market rate, creditworthiness of the borrower, or value of the security....

137 N.H. at 208, 624 A.2d at 1349. Thus, New Hampshire courts appear to have let the "common knowledge" holding of the *Humphreys v. Ash* line of cases wilt away on the vine without actually picking it off. The court concludes that an award for future damages must be reduced to present value and, given the complexity of the modern economic environment, that the reduction must be based upon specific economic evidence and not merely upon personal knowledge the jury may or may not possess.[4]

The court next considers the distinctly evidentiary question of which party bears the burden of introducing evidence on the discounting issue. The defendant argues that discounting is an element of the overall claim for front pay and, as such, the plaintiff must come forward with expert testimony. Defendant's Motion at 10. The plaintiff places the burden on the defendant, analogizing discounting to other evidence related to reduction or mitigation of damages.

■ At trial, the plaintiff bears the burden of proving "the extent and the amount" of her damages. *Kassel v. Gannett Co.,* 875 F.2d 935, 950 (1st Cir.1989) (citing *Whitehouse v. Rytman,* 122 N.H. 777, 780, 451 A.2d 370, 372 (1982); *Hangar One, Inc. v. Davis Assoc., Inc.,* 121 N.H. 586, 590, 431 A.2d 792, 795 (1981)). Although she need not prove her lost future earnings with "mathematical certainty or sliderule precision," the plaintiff "must produce sufficient data to demonstrate that [future] profits are reasonably certain to result." *Id.* (discussing evidentiary burden of tort plaintiff "seeking to recover for the loss of future earnings") (quoting *Dunlop v. Daigle,* 122 N.H. 295, 300, 444 A.2d 519, 522 (1982) (per curiam)) (citation omitted).

■ The court rules that the plaintiff bears the burden of coming forward with evidence of the proper rate of discounting. It is axiomatic that the plaintiff must prove her damages to a degree of reasonable certainty and she cannot satisfy that burden without evidence of the amount of future damages reduced to present value. *Kassel,* 875 F.2d at 951. Likewise, recent reported state decisions suggest, but never explicitly state, that the plaintiff must introduce discounting evidence. *See, e.g., Independent Mechanical Contractors v. Gordon T. Burke & Sons,* 138 N.H. 110, 114–16, 635 A.2d 487, 490–91 (1993); *Whispering Springs,* 137 N.H. at 208, 624 A.2d at 1349.

Federal courts in this and other circuits also place the burden on the plaintiff to produce evidence of the rate of discounting in

---

**3.** Fifty years ago, the Supreme Court reasoned that the *Severance* jury was familiar with interest rates by virtue of "popular drives for the sale of United States Government bonds ..." 93 N.H. at 298, 41 A.2d at 239.

**4.** Had the *Whispering Springs* court followed the antiquated approach of the *Humphreys v. Ash* line of cases, there would have been no need to introduce evidence because the present value of the mortgage note could have been determined by the jury's common knowledge of the current rate of return paid by government bonds or other investments. The supreme court's failure to apply the "common knowledge" approach to discounting in *Whispering Springs* further supports the court's finding that this is no longer the law in New Hampshire.

lawsuits decided under both common law and federal statute:

> In tort actions, loss of earning capacity is an economic concept based upon a medical foundation. A plaintiff has the burden of proving his claimed loss of earning capacity. To do so, he must offer evidence from which a jury may reasonably determine the annualized stream of income that the plaintiff, uninjured, would probably have earned ...

*Quinones–Pacheco,* 979 F.2d at 7 (citations omitted); *see Aldridge v. Baltimore and Ohio R.R.,* 789 F.2d 1061, 1066–67 (4th Cir. 1986) (Under FELA, "as a matter of federal law, the refusal to receive evidence of the present value of future lost wages or the failure to give a requested instruction on present value is error.") (quoting *St. Louis Southwestern Railway Co. v. Dickerson,* 470 U.S. 409, 410, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303 (1985) (per curiam)); *Gorniak v. National R.R. Passenger Corp.,* 889 F.2d 481, 486 (3d Cir.1989) (Under FELA, "[T]he law of this circuit places the burden on the plaintiff to produce evidence permitting a rational reduction to present value ..."). *But see Worden v. Consolidated Rail Corp.,* 689 F.Supp. 35, 37–38 (D.Mass.1988) ("[P]laintiff's failure to come forth with expert or other evidence regarding methods of present value computation is not fatal.") (citations omitted).

■ The court will entertain the plaintiff's claim for front pay only if she produces sufficient evidence to allow the jury rationally to reduce her lost future earnings to their January, 1995, value. Although the testimony of an economic expert is not absolutely required, this is the preferred approach. The court will not admit evidence of economic data, such as interest and inflation rates, without a proper foundation. Of course, the parties are encouraged to stipulate to a particular discounting method. Such an agreement would obviate the need for a foray into a "graduate seminar on economic forecasting." *Jones & Laughlin Steel Corp.,* 462 U.S. at 547, 103 S.Ct. at 2556 (quotation omitted).

*Conclusion*

Under New Hampshire law, wrongful termination is a tort and an award for the loss of future earnings is a proper measure of damages. However, the plaintiff must prove her damages with reasonable certainty and to satisfy this burden she must, *inter alia,* introduce sufficient economic evidence from which the jury may rationally determine the present value of her lost future earnings.

The defendant's motion in limine concerning front pay (document no. 50) is granted in part and denied in part.

SO ORDERED.