# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0588, <u>In the Matter of Caren Logan and James Logan</u>, the court on March 10, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case.  The respondent, James Logan, appeals, and the petitioner, Caren Logan, cross-appeals, a final divorce decree of the Circuit Court (<u>Foley</u>, J.).  We affirm in part and reverse in part.

The trial court found, or the record supports, the following facts.  The parties married in May 2004 and have two minor children.  Prior to their marriage, the parties signed a prenuptial agreement, which they agree is valid and enforceable.  The prenuptial agreement prescribes the manner in which the parties' property is to be divided in the event that they divorce.  As is relevant here, the prenuptial agreement provides that property that is classified as the "separate property" of the husband must be divided according to a formula: the wife is entitled to one percent of the husband's separate property for every full year of marriage, up to a maximum of thirteen percent.  The prenuptial agreement defines the "separate property" of the husband to be "all the property . . . which [the husband] now has or may hereafter acquire, together with the income earnings, [and] appreciation and depreciation thereof."  In contrast, the prenuptial agreement states that property titled in the names of both parties as joint tenants with rights of survivorship is to be "divided equally between the parties" in the event that they divorce.

The wife filed for divorce in 2013.  At the final hearing, the parties disputed, among other things, the length of their marriage for purposes of the prenuptial agreement's distribution formula: the husband argued that the marriage ended when divorce proceedings were instituted, while the wife contended that the marriage continued until a final judgment of divorce was entered.  After the final hearing, the trial court issued a final decree, in which it granted a divorce on fault grounds, and addressed issues relating to the division of property, child support, and the allocation of parenting time and decision-making authority.  Regarding the distribution formula, the trial court concluded that, for purposes of the prenuptial agreement, the wife had been married to the husband for eleven years, and was therefore entitled to an award equal to 11% of the value of the husband's separate property.  Each party filed a motion for reconsideration, which the trial court denied.  This appeal and cross-appeal followed.

I.  Percentage Interest of the Husband's Separate Patent Assets

       We begin by addressing the husband's claims on appeal.  He first argues that the trial court erred by awarding the wife 50% of his interest in certain patent assets, including limited liability companies that owned various patents. We agree.

       By way of background, on the first day of the final hearing, the parties filed a stipulation in the court relating to certain patent assets that the husband owned either directly or through limited liability companies.  The stipulation is titled "**STIPULATION REGARDING INTERESTS IN CERTAIN PROPERTY PURSUANT TO PRENUPTIAL AGREEMENT**," and provides:

> 1.  Certain of the assets that might be valued under the parties' Prenuptial Agreement formula present significant valuation difficulties. . . . .
>
> 3.  Patents Owned by Limited Liability Companies:
>
>> A.  In order to avoid valuation problems, [the wife] is awarded a certain percentage, <u>as determined by the Court</u>, of [the husband's] percentage ownership of the following LLCs: Personal Audio, Bringrr, and True Mail.
>>
>> B.  [The wife's] interest shall be as a member of each of these LLCs equal to her resulting percentage of [the husband's] membership interest.  By way of example only, if [the husband] has a 10% membership interest and [the wife] is awarded a 10% interest in [the husband's] membership, [the wife] would have a 1% membership interest in that LLC.
>
> 4.  Patents Owned by [the Husband]:
>
>> A.  There are three patents applications . . . owned directly . . . by [the husband] as of the date of this Stipulation . . . .  [One] application may eventually issue in a useable form.  If and when it does it will be . . . placed in an LLC. . . .  [The wife] will then be issued a membership interest in the LLC equal to the relative value of the [patent] within the portfolio times the certain percentage of assets, <u>as determined by the court</u>.

(Emphases added and omitted.)

The trial court interpreted the stipulation to modify the terms of the prenuptial agreement in two material respects. First, the court concluded that the stipulation authorized it to award the wife ownership interests in the LLCs in lieu of a monetary award. Second, the court ruled that the stipulation placed the patent assets "completely out of the process defined by the [p]renuptial [a]greement," such that the trial court was authorized to award the wife a percentage interest exceeding the percentage set by the terms of the prenuptial agreement. As a result, the trial court deemed the patent assets to be marital property, and awarded the wife 50% of the husband's interest in the LLCs.

On appeal, neither party disputes that the stipulation authorized the trial court to award the wife ownership interests in lieu of a monetary award. Nor does either party contest that, at the time that it issued the final decree, the trial court properly concluded that the wife was generally entitled to 11% of the husband's separate property under the prenuptial agreement. Rather, the husband argues that the trial court erred when it concluded that the stipulation superseded the general formula in the prenuptial agreement and, therefore, authorized the court to award the wife a percentage interest in excess of 11%. He contends that the clauses stating that the trial court would "determine[]" the wife's percentage interest are mere references to the trial court's responsibility to determine the length of the parties' marriage for purposes of the prenuptial agreement's formula.

The wife counters that the trial court correctly interpreted the stipulation. Relying upon the language in the stipulation that her percentage interest was to be "determined by the court," the wife argues that the stipulation granted the trial court the "unfettered discretion to chose [sic] a percentage of [the husband's] patent interests to award [to the wife]." The wife asserts that she was able to secure this concession from the husband because, had he not agreed to it, the husband faced "the potential devaluation of [the patent] assets" when the trial court valued them.

We agree with the husband and conclude that the stipulation did not supersede the formula set forth in the prenuptial agreement. The stipulation authorized the trial court merely to award ownership interests in lieu of monetary awards—it did not authorize the court to disregard the formula in the prenuptial agreement and award the wife 50% of the husband's interest in the patent assets.

"A stipulated agreement is contractual in nature and therefore is governed by contract rules." Public Serv. Co. of N.H. v. Town of Seabrook, 133 N.H. 365, 370 (1990). The interpretation of a contract is a question of law, which we review de novo. Czumak v. N.H. Div. of Developmental Servs., 155 N.H. 368, 373 (2007). When interpreting a written agreement, we give the language used by the parties its reasonable meaning, "considering the

3

circumstances and the context in which the agreement was negotiated, and reading the document as a whole." Id. Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the agreement. Id.

The crux of the parties' dispute is whether the two clauses in the stipulation providing that the wife's interest would be "determined by the court" authorized the trial court to award the wife a percentage interest exceeding that set by the terms of the prenuptial agreement. When the clauses are read in isolation, both parties' interpretations appear to be reasonable. However, reading the document as a whole, and considering the circumstances in which the stipulation was negotiated, we conclude that only the husband's interpretation is reasonable. Neither party contests that, at the time the stipulation was executed, the parties disputed how to calculate the length of their marriage for purposes of the prenuptial agreement. It is reasonable, therefore, to interpret the clauses as references to the court's responsibility to resolve the parties' dispute regarding the length of the marriage. In other words, those clauses are mere acknowledgements that the court was tasked with determining the length of the parties' marriage and, consequently, the correct percentage of the husband's separate property to be awarded pursuant to the terms of the prenuptial agreement.

Likewise, it is undisputed that, at the time the stipulation was executed, the parties had already agreed that the prenuptial agreement was valid and enforceable. Thus, the parties had no reason to set aside the distribution formula and give the trial court unfettered discretion to determine the percentage ownership interest in the LLCs that the wife would receive. Although the wife asserts that, in order to persuade her to accept the stipulation, the husband agreed to ignore the prenuptial agreement, the stipulation contains no expression of that intent. Nor does the wife direct our attention to anything in the record that supports her claim.

Further, the wife's interpretation is at odds with the express purpose of the stipulation: to avoid the "significant valuation difficulties" associated with valuing the patents. See Walsh v. Young, 139 N.H. 693, 695 (1995); Restatement (Second) of Contracts § 202(1), at 86 (1981) (stating that "if the principal purpose of the parties is ascertainable it is given great weight" in contract interpretation). As devised by the parties, the solution to the valuation problem was to authorize the trial court to award ownership interests in the holding LLCs in lieu of monetary awards. This would allow the trial court to avoid valuation entirely and would also ensure that the wife received a percentage of the patent assets that was proportional to her overall award under the prenuptial agreement. In contrast, merely changing the method by which the wife's percentage interest was determined—from the formula set forth in the prenuptial agreement to the exercise of discretion by the trial court—would not have resolved the difficulties in valuing the patents.

4

Finally, we note that only the husband's interpretation is consistent with the title of the stipulation: "**STIPULATION REGARDING INTERESTS IN CERTAIN PROPERTY PURSUANT TO PRENUPTIAL AGREEMENT**."  "A title, like every other portion of a contract, may be looked to in determining [the contract's] meaning . . . ."  17A Am. Jur. 2d Contracts § 372 (2017); see also Great Am. Dining v. Philadelphia Indem. Ins. Co., 164 N.H. 612, 618-24 (2013) (considering captions in interpreting insurance policy).  Here, the title suggests that the stipulation concerns property subject to, rather than removed from, the prenuptial agreement.  See Black's Law Dictionary 1431 (10th ed. 2014) (defining "pursuant to" as "[i]n compliance with" or "in accordance with").

For these reasons, we conclude that the stipulation did not empower the trial court to disregard the formula in the prenuptial agreement.  Accordingly, the trial court erred when it awarded the wife 50% of the husband's interest in the patent assets.  The wife is entitled to 11% of the husband's interest in the LLCs, as provided by the prenuptial agreement.

II.  Promissory Notes' Value

The husband next argues that the trial court erred by valuing two promissory notes at their face value, rather than at a lesser value that reflects the diminished value of the property securing the notes.  The record establishes that in 2012, the husband obtained the promissory notes as part of what he characterized as a "land banking transaction," the purpose of which was to trigger a taxable event and to obtain advantageous federal tax treatment of capital gains arising out of his ownership of two properties.  In order to do so, the husband sold the two properties to two real-estate holding companies that he owns.  In exchange for the properties, the husband received the two promissory notes from the companies.  The notes have a face value of approximately $1.4 million, a maturity date of December 28, 2017, and are secured by mortgages on the properties.

At the final hearing, the parties stipulated that the value of the properties had decreased between 2012 and 2015, such that the face value of the notes was greater than the then-current value of the properties.  Nonetheless, at the final hearing, the husband testified that, notwithstanding the diminished value of the properties, he still intends to "pay off" the promissory notes in full.

In the final decree, the trial court classified the notes as the husband's separate property, and valued the notes at their face value, declining to reduce the notes' value to account for the diminished value of the securing properties.  Consequently, the trial court included the face value of the notes when it divided the husband's separate property pursuant to the prenuptial agreement.

The husband argues on appeal that the trial court erred when it valued the promissory notes at their face value because "the notes' value [was] intrinsically tied" to the properties, which are now "worth substantially less than the promissory debt." We are not persuaded.

"[D]etermining the value of any given asset is left to the sound discretion of the trial court." In the Matter of Chamberlin & Chamberlin, 155 N.H. 13, 16 (2007). We will not disturb the trial court's findings and rulings unless they are unsupported by the evidence or erroneous as a matter of law. See In the Matter of Nyhan and Nyhan, 147 N.H. 768, 770 (2002); see also Celestica, LLC v. Communications Acquisitions Corp., 168 N.H. 276, 280 (2015).

The present value of a promissory note is "determined by its interest rate, duration, credit-worthiness, security and other factors." Whispering Springs Tenant Assoc. v. Barrett, 137 N.H. 203, 208 (1993). A trial court may reasonably consider the risk of nonpayment in determining value. See, e.g., Brosnan v. Brosnan, 817 P.2d 478, 480-81 (Alaska 1991) (finding trial court's decision to value promissory note at face value clearly erroneous in light of evidence that there was, at best, "a 10% chance of recovering the loan"). Here, the husband's testimony—that he intends to pay the notes in full—provided the trial court with a reasonable basis to conclude that the face value of the notes accurately reflects their present value. The trial court's finding is supported by the evidence, and we therefore affirm its decision on this issue.

We note that the husband also argues that the trial court erred by failing to include the "negative valuation" of the real-estate holding companies when the court calculated the total value of the husband's separate property. However, because the husband did not present this question in his notice of appeal, it is waived, and we decline to address it. See Lassonde v. Stanton, 157 N.H. 582, 587 (2008) ("Appellate questions not presented in a notice of appeal are generally considered waived by this court.").

III. Inclusion of Debts in the Separate Property of the Husband

The husband next asserts that the trial court erred by refusing to reduce the total value of his separate property to account for alleged debts in the amount of $55,950. At the final hearing, the husband testified to the existence of these debts, which he claimed were associated with uncleared checks that were drawn on his bank account. In the final decree, the trial court declined to include the debts when it valued the husband's separate property pursuant to the prenuptial agreement. The court stated, without further explication, that "[t]he evidence did not support using [the husband's] negative entry of $55,950.00." The husband contends that the trial court erred when it rejected his uncontested testimony, "[g]iven the absence of any finding by the [trial] [c]ourt questioning [the husband's] credibility." We disagree.

6

"[W]e defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." In the Matter of Aube & Aube, 158 N.H. 459, 465 (2009). The trial court is free to accept or reject, in whole or in part, the testimony of any party, and is not required to believe even uncontested evidence. Id. at 466. If the court's findings could reasonably have been made on the evidence presented, they will stand. In the Matter of Spenard & Spenard, 167 N.H. 1, 3 (2014).

We find no reversible error in the trial court's decision to reject the husband's claimed debts. The trial court was in the best position to assess the husband's credibility and "weigh the evidence before it." In the Matter of Peirano & Larsen, 155 N.H. 738, 752 (2007). The court appears to have found the husband's testimony not credible or persuasive. Having reviewed the record, we conclude that the trial court's finding could reasonably have been made based upon the evidence presented.

IV. Division of Federal Tax Refund

Finally, the husband contends that the trial court erred in two respects with regard to its division of the parties' joint 2010 federal tax refund in the amount of approximately $84,000. As of the final hearing, the IRS had not yet issued the refund. In the final decree, relying upon its interpretation of state law, the trial court concluded that the refund was jointly titled property and must be "divided equally" pursuant to the terms of the prenuptial agreement. After dividing the tax refund equally, however, the trial court went one step further: it proceeded to classify the husband's share of the refund as his separate property, and awarded the wife 11% of the husband's share.

The husband first argues that the trial court erred by classifying the refund as jointly titled property. He contends that, under federal law, a refund "belongs to the party whose funds paid the tax"—in this case, the husband. He also asserts that, if the IRS had issued the 2010 tax refund, the IRS would have deposited the refund "into one of [the husband's] individually titled separate accounts." Consequently, he argues, the full amount of the refund should have been classified as his separate property, because the refunded money would have been "held in [his] name" in one of his separate accounts. We are not persuaded.

Contrary to the husband's argument, federal law does not govern the issue. Rather, "the existence of any property rights in a tax refund resulting from the filing of a [joint federal tax return] is determined under state law." In re Estate of Trecker, 215 N.W.2d 450, 450 (Wis. 1974); see also In re Wetteroff, 453 F.2d 544, 547 (8th Cir. 1972) ("Congress most definitely did not intend [the law permitting joint returns] to affect or change the ownership of property

7

rights between taxpayers."). Thus, the trial court did not err in declining to rely upon federal law to determine each party's interest in the refund.

Further, to the extent that the husband is arguing that, as matter of state law, the tax refund is not titled jointly because the refund would have been deposited into one of his separate bank accounts, he has failed to provide a record demonstrating that he made this argument in the trial court. Therefore, we decline to review it. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (stating that, generally, a party may not have judicial review of a matter where the party fails to provide a sufficient record demonstrating that it was raised in the trial court). Because, in his brief, the husband has developed no other argument challenging the trial court's conclusion that the refund is titled jointly under state law, we affirm the trial court's decision to divide the refund equally.

The husband next argues that even if equal division was proper, the trial court erred when it classified the husband's share of the refund as separate property, and then awarded 11% of his share to the wife. We agree.

As noted above, the parties' prenuptial agreement governs the division of their property in the event that they divorce. "Ordinary principles of contract law govern prenuptial agreements." In the Matter of Nizhnikov & Nizhnikov, 168 N.H. 525, 531 (2016). We review the trial court's interpretation of the prenuptial agreement de novo. See Czumak, 155 N.H. at 373. We give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. Id.

We conclude that, under the prenuptial agreement, the husband's share of the tax refund may not be further divided as his separate property. The trial court concluded that the tax refund was titled jointly, which we interpret to mean that the court found that the parties held the tax refund as joint tenants with rights of survivorship. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (stating that the interpretation of a court order presents a question of law, which we review de novo). As the trial court determined, the prenuptial agreement clearly establishes that property held by the parties as joint tenants with rights of survivorship must be "divided equally" upon divorce. However, there is no provision that states that each party's share is then to be divided as separate property. Rather, the prenuptial agreement appears to create two separate methods by which the parties' property is to be divided: the length-of-marriage formula for separate property, and equal division for property held by the parties as joint tenants with rights of survivorship.

8

This interpretation is consistent with how the prenuptial agreement treats the division of the parties' homestead—another asset that the parties held as joint tenants with rights of survivorship. The prenuptial agreement provides that the husband's separate property "by definition does not include" the husband's interest in the parties' homestead. The use of the phrase "by definition" suggests that the reason the husband's separate property does not include his interest in the homestead is because his separate property is not defined to encompass his interest in an asset held by the parties as joint tenants. By extension, the husband's interest in other jointly titled property—in this case, the tax refund—does not fall within the definition of separate property, and is not to be divided under the formula applicable to separate property.

Therefore, once the tax refund was equally divided, the trial court erred by further dividing the husband's portion of the refund as separate property. Accordingly, we reverse the trial court's decision to award the wife an additional 11% of the husband's 50% share of the tax refund.

V.  The Wife's Claims on Appeal

The wife raises several claims of error on appeal: (1) she argues that the trial court erred by making her responsible for the provision of the children's health insurance; (2) she argues that the trial court erroneously admitted into evidence her privileged therapy records, see RSA 330-A:32 (2011); and (3) she requests that we remand the case so that the trial court can increase her award under the prenuptial agreement from 11% to 12% of the husband's separate property, in light of the fact that the marriage has continued for another year as a result of the present appeal. We examine these arguments in turn.

In her brief, the wife asserts a number of reasons why the husband should be paying for the children's health insurance. She then argues that, because the trial court failed to explain its reasoning for requiring her to pay for health insurance, we must remand the case for further consideration of the issue. We conclude that her argument that the trial court erred by failing to explain its reasoning is not preserved for our review because she failed to present it to the trial court. Although the wife did claim in her motion for reconsideration that the trial court erred by ordering her to pay for the children's health insurance, she did not request an explanation for the court's decision or assert that the court erred in failing to provide one. Therefore, we decline to address that argument. See In the Matter of Hampers & Hampers, 154 N.H. 275, 287 (2006) ("[P]arties may not have judicial review of matters not raised in the forum of trial.").

9

To the extent that the wife is also arguing that we should reverse the decision of the trial court requiring her to provide health insurance, we disagree. We afford broad discretion to the trial court in divorce matters, and we will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law. In the Matter of Johnson & Johnson, 158 N.H. 555, 558 (2009). The party challenging the court's order has the burden of showing that the order was "improper and unfair." Id. "Further, in the absence of specific findings, a court is presumed to have made all findings necessary to support its decree." In the Matter of Costa & Costa, 156 N.H. 323, 331 (2007) (quotations omitted). Here, having reviewed the record, in conjunction with the trial court's other, uncontested rulings on child support, we cannot conclude that the trial court unsustainably exercised its discretion in requiring the wife to provide health insurance for the children.

We decline to reach the merits of the wife's remaining arguments on appeal. First, the wife has failed to challenge one of the trial court's alternative grounds for admitting her privileged therapy records. The trial court concluded that disclosure of the records was warranted both because the wife had waived the privilege, and because the privilege should be pierced. See Desclos v. S. N.H. Med. Ctr., 153 N.H. 607, 611 (2006) (listing circumstances in which trial court may compel disclosure of privileged materials). However, in her brief, the wife challenges only the court's conclusion that she waived the privilege. Even considering the passing reference she makes to the doctrine of piercing the privilege in her reply brief, we conclude that she has not sufficiently developed for our review an argument on piercing the privilege. See State v. Reinholz, 169 N.H. 22, 31 (2016). Because the trial court's unchallenged ruling regarding piercing the privilege provides a sufficient alternative basis for its decision to compel disclosure of the records, we affirm the trial court's decision. See Koor Communication v. City of Lebanon, 148 N.H. 618, 624 (2002).

Second, by failing to present it in her notice of appeal, the wife has waived her argument that, because the parties' marriage has continued for an additional year during this appeal, her award should be increased to 12% of the separate property of the husband. See Lassonde, 157 N.H. at 587. We do not agree with the wife that this argument is encompassed by the following question in her notice of appeal: "Is the court's property award under the parties' prenuptial agreement in error where the court miscalculated the value of assets?" See Sup. Ct. R. 16(3)(b). That question identifies a single claim of error regarding the property award—that the trial court erred in valuing assets—whereas the premise of the wife's argument on appeal is that, because of the passage of time during this appeal, she is entitled to a greater percentage of the husband's separate property under the prenuptial agreement. Therefore, her argument is waived, and we decline to review it. See Lassonde, 157 N.H. at 588.

10

Finally, the remaining issues the wife raised in her notice of appeal, but did not brief, are deemed waived.  See In the Matter of Kempton & Kempton, 167 N.H. 785, 804 (2015).

Affirmed in part; and reversed in part.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**