Hillsborough, }
Dec. 1, 1936. }

## EMMA E. WOODARD LAMB
*v.*
## UNITED STATES FIRE INSURANCE CO.

*Ivory C. Eaton* (by brief and orally), for the plaintiff.

*Thorp & Branch* (*Mr. Branch* orally), for the defendant.

Marble, J. It is conceded that the fire was purposely set. Pools of kerosene and kerosene-soaked newspapers were found in those portions of the house which did not burn. Although the duty of adducing some proof that the plaintiff was responsible for the fire devolved upon the defendant, no logical reason appears for holding inapplicable the usual rule which places "upon a plaintiff the general risk of non-persuasion." "She [the plaintiff] was uninsured for a fire set by her own procuring," and "Her right of recovery depended upon proof that her loss was insured." *Trepanier* v. *Insurance Co.*, ante, 118.

At the time of the fire the plaintiff and her foster father, Henry O. Woodard, occupied the insured premises. When the plaintiff procured her policy she informed the agent who issued it that she had bought new furniture. Thereupon the agent increased the insurance on the household property from $500 to $1,600. On cross-examination the plaintiff admitted that at the time she made this statement the only "new" furniture she owned had been bought at least eight years before.

The plaintiff had title to the realty subject to a life estate which, at her father's request, she had conveyed to him a month before the fire. Mr. Woodard was practically blind and was dependent on the plaintiff for care. The family income was so meager as to necessitate relief contributions from the city of Nashua. The plaintiff was engaged to marry Walter L. Lamb, who became her husband a year later, but she concealed her engagement from Mr. Woodard because of his opposition to her marriage.

At the first trial the plaintiff testified that Lamb was out of work at the time of the fire. At the second trial she declared that she had been mistaken in this respect and that Lamb told her he "had been working for ten years." Lamb, though present in court, did not testify, and there is no evidence as to his whereabouts on the afternoon and evening of April 29.

Late in the afternoon of that day the plaintiff, by her own admission, purchased five gallons of kerosene. After filling her oil stove and attending to a few household duties she made a brief call on a neighbor. On her return she found Mr. Woodard at the telephone. He told her he had just received a message from a man he did not know to the effect that a friend in West Townsend, Massachusetts, was sick and wished to see him that evening. He objected to the drive, saying to the plaintiff: "I hate to go up there awfully tonight; I am blind, and I hate to ride in the night." As a consequence of this

objection the plaintiff telephoned the friend in West Townsend and learned that he was not ill. Then, at about seven o'clock, she took Mr. Woodard in her automobile and drove "down town" to buy him "some underwear."

They found the stores closed, however; whereupon Mr. Woodard suggested that they call on a clergyman who lived on Pine Hill Road about two miles beyond the center of the city. Although the plaintiff had lived in Nashua all her life and although Mr. Woodard "very seldom went out anywhere at night" and "hated" to ride at that time, they spent the next two hours in a vain attempt to discover this clergyman's residence.

The fire alarm was sounded at 9:28 o'clock. When the plaintiff reached home the fire department was already there. There was no indication that anyone except the firemen had broken into the house.

Mr. Woodard had placed some money in a glass jar inclosed in a tin tobacco can and had buried the can and its contents in the cellar. A police inspector searched for this can at Mr. Woodard's request and found it by digging "down about a foot and a half in the ground." The plaintiff knew that the money was hidden there but, in the opinion of the inspector who found it, there was never any danger of its burning.

The plaintiff testified vaguely as to one or two "threats" against Mr. Woodard made by "his own people" some years before, but she admitted that at the time of the fire he had not "an enemy in the world." Neither she nor Mr. Woodard could suggest anyone who might possibly have a motive for injuring them. The plaintiff did not inform the police of the alleged telephone call requesting Mr. Woodard's presence in West Townsend, nor did she mention this call when her deposition was taken. Mr. Woodard testified that he thought he told the police about it, but the inspector asserted definitely that he did not.

We therefore conclude that the evidence is altogether insufficient to justify a finding that the plaintiff neither set nor procured to be set the fire which destroyed her property.

*Judgment for the defendant.*

BRANCH, J., did not sit: PAGE, J., was absent: the others concurred.