Kruzel v. UNUM Life                    CV-97-414-M    11/06/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Dr. Paul Kruzel,
     Plaintiff

     v.                                    Civil No. 97-414-M

UNUM Life Insurance Company
of America,
     Defendant


## O R D E R


This action is a coverage dispute between the plaintiff, Dr. Paul Kruzel, and his disability insurer, the defendant UNUM Life Insurance Company of America ("UNUM").  The parties have filed cross motions for summary judgment.  For the reasons that follow, the defendant's motion is granted and the plaintiff's motion is denied.


## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party carries its burden, the burden shifts to the nonmoving party to demonstrate, with regard to each issue on which it has the burden of proof, that a trier of fact could reasonably find in its favor. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

At this stage, the nonmoving party "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue" of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial. Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).


## Background

The plaintiff is a dentist who, in 1987, suffered the accidental amputation of his left thumb. The thumb was surgically replanted by Dr. Deborah Ekstrom and the plaintiff was able to resume practicing dentistry. In 1989, plaintiff

2

purchased a dental practice in Concord, New Hampshire, and operated it as a sole practitioner. On June 6, 1991, he bought a Disability Income Policy (the "Policy") from the defendant. The policy included a Future Insurance Option Rider (the "Option Rider") that entitled plaintiff to apply for additional disability income benefits within a defined option period.

In late 1992, plaintiff began experiencing discomfort and tingling in his hands. He was diagnosed as suffering from carpal tunnel syndrome. Carpal tunnel release surgery was performed on his left arm on December 18, 1992. The surgery relieved the plaintiff's discomfort for approximately a year. Then, in late 1993 or early 1994, the symptoms returned. On July 14, 1994, plaintiff sought medical attention for those symptoms, consulting Dr. J. Cletus Baier. On March 20, 1995, he exercised the Future Insurance Option Rider on the Policy. The rider's effective date was June 6, 1995.

Plaintiff continued to seek medical treatment of the discomfort in his hands and was eventually advised by Dr. Ekstrom on May 15, 1995, that he was "unable to continue in his present occupation" and that he should "consider alternative careers." On June 14, 1995, plaintiff put his dental practice up for sale and, on August 7, 1995, he filed a disability claim with the defendant, listing that day as the start of his disability.

UNUM began paying disability benefits under the original Policy, but denied coverage under the Option Rider based on an

exclusion applicable to disabilities beginning before the effective date of the Option Rider.

Plaintiff filed this action in state court, seeking a declaration that UNUM is obligated to pay him benefits under the Option Rider. Following removal of the case to this court, both parties filed cross motions for summary judgment.

## Discussion

The parties' initial dispute concerns the burden of proof in the underlying action. The suit was brought under New Hampshire's declaratory judgment statute, N.H.Rev.Stat.Ann. ("RSA") § 491:22 (1997), which provides in part that "[a]ny person claiming a present legal or equitable right or title may maintain a petition against any person claiming adversely to such right or title to determine the question as between the parties, and the court's judgment or decree thereon shall be conclusive." We look to New Hampshire law to determine which party has the burden of proof, as that question involves substantive, rather than procedural, law. See Suburban Const. Co, Inc. v. Sentry Ins., 809 F.Supp. 168, 171 n.1 (D.N.H. 1993).

Plaintiff contends that UNUM bears the burden of proof under RSA 491:22-a (1997), since the case relates to insurance coverage. That section provides: "In any petition under RSA 491:22 to determine the coverage of a liability insurance policy, the burden of proof concerning the coverage shall be upon the insurer whether he institutes the petition or whether the

4

claimant asserting the coverage institutes the petition." UNUM counters that according to its plain language, the statute only applies to coverage disputes over <u>liability</u> insurance policies, and the policy at issue here is not a liability policy. <u>See</u> <u>Johnson v. Watts Regulator Co.</u>, 1994 WL 587801, at *6 (D.N.H. Oct. 26, 1994) (declining to apply N.H.Rev.Stat.Ann. § 491:22-a where policy at issue was not a liability policy), <u>aff'd</u>, 63 F.3d 1129 (1st Cir. 1995). Plaintiff rejoins that the New Hampshire Supreme Court has not interpreted the section in that manner, but has broadly applied it — even in cases involving other than liability policies. <u>See</u> <u>e.g.</u>, <u>Trombly v. Blue Cross Blue Shield of New Hampshire - Vermont</u>, 120 N.H. 764 (1980)(medical benefits insurance policy); <u>Curtis v. Guaranty Trust Life Ins. Co.</u>, 132 N.H. 337 (1989) (accident policy covering plaintiffs' minor daughter).

In both <u>Trombly</u> and <u>Curtis</u>, however, the court merely referenced § 491:22-a in passing. In neither case did the court squarely address the contention that the statute applies only to cases involving liability insurance. This court is confident that if called upon to construe § 491:22-a in a context like that presented here, the New Hampshire Supreme Court would likely reach the same conclusion. RSA 491:22-a is not applicable to cases involving insurance policies that are not liability policies. <u>See</u> <u>Hutton v. Essex Group, Inc.</u>, 885 F.Supp. 331, 332 (D.N.H. 1994) (noting that where an issue has not been decided by the state's courts or legislature, a federal court exercising

diversity jurisdiction may predict how the state supreme court would decide the issue); Johnson v. City of Laconia, 141 N.H. 379, 380 (1996)(where language of statute is plain and unambiguous, court need not look beyond language to discern legislative intent).

As RSA 491:22-a does not apply, "the burden in this case is not shifted to the defendant[] . . . but remains with the plaintiff under traditional New Hampshire contract principles placing the burden on the party arguing the contract has been breached." New Hampshire Ball Bearings v. Aetna Cas., 848 F. Supp. 1082, 1089 (D.N.H. 1994), rev'd on other grounds, 43 F.3d 749 (1st Cir. 1995). In any event, notwithstanding some skirmishing over which of them bears the initial burden of producing evidence that an applicable exclusion exists, the parties do appear to agree that the ultimate burden of persuasion rests with the plaintiff. See, e.g., Lamb v. Insurance Company, 88 N.H. 306, 307 (1936) ("Although the duty of adducing some proof that the plaintiff was responsible for the fire devolved upon the defendant, no logical reason appears for holding inapplicable the usual rule which places 'upon a plaintiff the general risk of non-persuasion.'"); Trepanier v. Insurance Co., 88 N.H. 118, 121 (noting that the plaintiff "was required to show facts making the exclusions and exceptions of the policies inapplicable"). Thus, the plaintiff will be treated, for purposes of resolving these summary judgment motions, as having the ultimate burden of proof at trial on the issue of coverage.

6

UNUM contends that it is entitled to summary judgment because there is no genuine issue as to the one material fact — that the plaintiff's disability began before the Policy's effective date, and, therefore, it is entitled to judgment as a matter of law.  Plaintiff, on the other hand, argues that because UNUM cannot prove that he was disabled prior to the policy's effective date he is entitled to judgment declaring that benefits under the Option Rider are due him.

The Option Rider provides that "no benefit will be payable under the new coverage for any disability that begins before the effective date of the new coverage unless you return to work full time for at least six months while the new coverage is in effect."  Disability and disabled are defined in the policy as "the period while you are satisfying the Elimination Period, or while the Total Disability Benefit, the Residual Disability Benefit or the Loss of Use Benefit is payable."  (Policy at 6.).  Neither the Total Disability Benefit nor the Loss of Use Benefit is at issue here.

The Elimination Period begins on the first day of total or residual disability and consists of the 90 days before the date benefits are payable "during which you are totally or residually disabled."  (Policy at 7.)  The Policy provides that "[i]f the disability ceases before you satisfy the Elimination Period and you become disabled again from the same cause within 6 months, we will combine those periods of disability to determine when benefits begin."  (Policy at 7.)

7

The Policy's definition of residual disability and residually disabled depends on whether the Elimination Period has been satisfied.  During the Elimination Period the terms mean:

> 1. injury or sickness does not prevent you from engaging in your regular occupation, BUT does restrict your ability to perform the material and substantial duties of your regular occupation:
>    a. for as long a time as you customarily performed them before the injury or sickness; or
>    b. as effectively as you customarily performed them before the injury or sickness; and
> 2. you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness.  We will waive this requirement when continued care would be of no benefit to you.

(Policy at 7.)  The post-Elimination Period definition is as follows:

> After the Elimination Period has been satisfied, "Residual disability" and "residually disabled" then mean that as a result of the same injury or sickness which caused you to satisfy the Elimination Period:
> 1. you experience at least a 20% loss of net income in your regular occupation; and
> 2. you are receiving medical care from someone other than yourself which is appropriate for the injury or sickness.  We will waive this requirement when continued care would be of no benefit to you.

(Policy at 7.)

Interpretation of the Policy is governed by state law.  See LaSorsa v. UNUM Life Ins. Co., 955 F.2d 140, 147 (1st Cir. 1992). Under New Hampshire law, construction of policy language presents a question of law for the court to decide.  See Calabraro v. Metropolitan Prop. & Cas. Ins. Co., 142 N.H. 308, 310 (1997). The court "construe[s] the terms of the policy as would a reasonable person in the position of the insured on more than a casual reading of the policy as a whole."  Id. at 310 (quoting

8

Brouillard v. Prudential Prop. & Cas. Ins. Co., 141 N.H. 710, 712 (1997).

UNUM maintains that the plaintiff's disability began "well before" June 6, 1995, since his medical and financial records indicate that the hours he worked and his effectiveness at work declined steadily between August 1994 and June 6, 1995. UNUM relies on the following undisputed facts. Plaintiff reported to Dr. Ekstrom on August 17, 1994, that his symptoms were interfering with his work. (Ekstrom Dep. at 20-21; Pl. Dep. At 48.) On August 18, 1994, plaintiff reported to Dr. Ralph D. Beasley that he had to decrease his working hours "from a full eight hours a day to stopping around 3:30 in the afternoon." (Beasley Dep. at 28; Pl. Dep. at 55; Beasley Ex. 4.) He also told Dr. Beasley that he was dropping his dental instruments. (Beasley Dep. at 29; Pl. Dep. at 57; Beasley Ex. 4.) On August 23, 1994, he informed Dr. H. James Forbes that he had cut back on his work time and was working only four days a week. (Pl. Dep. at 72; Pl. Ex. 5.) On September 15, 1994, Dr. Baier noted in his records that plaintiff "has had to continue to alter work hours and take breaks because of pain in the thumb as well as cramping in the forearm on the left." (Decker Aff. Ex. 2.) In office notes dated January 12, 1995, Dr. Baier observed that even with pain medication plaintiff had to "take breaks during the day and sometimes curtail his whole work day because of lingering pain." (Decker aff. Ex. 3.)

While plaintiff does not concede that the pain in his hands adversely affected his work performance, he controverts only one of his doctors' reports recording a decrease in or rearrangement of the hours he was able to work (See Pl. Dep. at 100 (disputing Dr. Beasley's report of 20 hours per week).)  On the undisputed facts, a reasonable jury could only conclude that the plaintiff was experiencing over this period a restriction in his ability to work "as long a time as [he] customarily" had.  Therefore, there is no genuine dispute of material fact as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  Under the terms of the Policy, the Elimination Period was triggered some time prior to June 6, 1995.

UNUM next points out that plaintiff's disability could not have begun before July 14, 1995, the day he first consulted Dr. Baier about his symptoms, as the definition of residual disability requires that the insured be receiving appropriate medical care from someone other than himself.  Assuming then, UNUM's argument continues, that plaintiff's disability began between July 14, 1994 and June 6, 1995, that disability could not have ceased such that a new disability commencing on August 7, 1995, the day plaintiff claims his disability started, could qualify under the Policy as a separate carpal tunnel related disability.

The Policy defines a successive disability as follows:

A period of disability which follows a past period of disability will be considered a separate period of disability only if the subsequent period of disability is:
1. caused by a different injury or sickness than the one which caused the past period of disability; or
2. separated from the last period of disability by at least six months during which you are able to return to work full time in your regular occupation.
Any such separate period of disability will be considered a new disability; it will be subject to its own Elimination Period and Maximum Benefit Period and will be subject to all policy requirements. Any other subsequent period of disability will be considered an extension of the past period of disability.

UNUM contends that because no six month period intervened between plaintiff's periods of disability during which plaintiff was able to return to work full time, he suffered a continuing period of disability beginning prior to the Option Rider's effective date.

UNUM supports its argument with a report by its economic expert, James Gravel. The report posits alternative disability starting points of August, September, and October, 1994, and then calculates the prior net income, as defined in the Policy, for each starting point. The report demonstrates that no matter what starting point is used, there is no six month period between periods of disability during which plaintiff returned to work full time. Thus, under the successive disabilities provision of the Policy, the plaintiff's August 7, 1995 disability is a continuation of the prior disability, as defined by the Policy's terms.

An example may clarify UNUM's argument. Assuming a start date of August 1, 1994, prior net income, as defined by the policy is $29,522 (See Gravel Aff. Ex. 4; see also Ex. 7 to Mem.

11

of Law in Supp. of Pl.'s Obj. to UNUM's Mot. for Summ. J. and Pl.'s Cross Mot. for Summ. J. ("Pl.'s expert opinion")(computing same highest average month net income). Eighty percent of that figure is $23,617 (See Pl.'s expert opinion). Assuming plaintiff's symptoms did not abate during that period, the Elimination period would run from August through October, 1994. From November, 1994 through February, 1995 plaintiff's monthly income was less than $23,617. Thus, plaintiff was residually disabled under the Policy. In March, 1995, plaintiff's income was $24,655, so he was not disabled under the policy's terms. In April, however, plaintiff's income again dropped below $23,617 and remained below that figure in May, June, July and August. Plaintiff was, therefore, disabled during that period. As the May to August period is separated from the last period of disability by only one month (March), it is "considered an extension of the past period of disability" (Policy at 9). Thus, plaintiff's disability in August, 1995, for which he seeks benefits under the Option Rider, would, under the policy's terms, be the same disability as existed prior to June 6, 1995.

UNUM's expert performed the same calculations for starting months of September and October and obtained similar results. UNUM does not run a calculation for any date after October 1, 1994, because after satisfying the 90 day Elimination Period, there would be fewer than six months remaining until June, 1995.

Plaintiff attaches some significance to the defendant's failure or inability to "identify a specific disabling event or

12

specific disability date." The Policy, however, does not require the occurrence of a disabling event, and, although the ninety-day Elimination Period must, of necessity, start on some date, UNUM's inability to precisely determine that date is not fatal. UNUM has shown that the disability started some time before June 6, 1995, that it could not have started prior to July 14, 1994, and whatever date between those two is identified as the actual start date, the disability experienced on August 7, 1995, was an extension of the prior disability. Plaintiff is therefore not entitled to benefits under the Option Rider.

Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 6) is granted and plaintiff's cross-motion for summary judgment (document no. 8) is denied.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

November 6, 1998

cc: Arthur W. Perkins, Esq.
    Gordon A. Rehnborg, Jr., Esq.
    Byrne J. Decker, Esq.

13